[No. B070749. Second Dist., Div. Seven. Mar. 3, 1993.]

PACIFIC ESTATES, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AMERICAN SPECIALTY INSURANCE COMPANY et al., Real Parties
in Interest.

COUNSEL

Cummins & White, Kent M. Bridwell and Gene A. Weisberg for Petitioners.

No appearance for Respondent.

Barger & Wolen, Larry M. Golub, Linda R. Caruso, Wilson, Kenna & Borys, Lawrence Borys, Brian S. Nelson, Boornazian, Jensen & Garthe, David J. Garthe, Kathleen E. Hegen, Richards, Watson & Gershon, Erwin E. Adler, Steven R. Orr, Koslov & Cady, John Koslov, Eurus Cady, Negele, Knopfler, Pierson & Robertson and Deborah Broom Pegg for Real Parties in Interest.

OPINION

JOHNSON, J.—Petitioners seek a peremptory writ of mandate to compel respondent court to reconsider its ruling denying real party in interest's, Pacific Club Homeowners Association (PCHOA), motion for a determination a settlement was made in good faith. The trial court denied the motion out of concern over the binding effects of any such finding on nonparty, nonparticipating insurers based on the decision in *Diamond Heights Homeowners Assn.* v. *National American Ins. Co.* (1991) 227 Cal.App.3d 563 [277 Cal.Rptr. 906]. We decline to follow the *Diamond Heights* court's interpretation of Code of Civil Procedure section 877.6 or the effects on nonparticipating insurers of a good faith determination under that section, and issue a peremptory writ of mandate directing respondent court to reconsider its ruling in light of this opinion.[1]

FACTS AND PROCEEDINGS BELOW

PCHOA brought suit seeking damages for various construction defects in a condominium project. It brought suit against the project developer, Pacific Club, a limited partnership, and the three general partners of Pacific Club:

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

J. Elliott Construction Company; Pacific Estates, which also marketed the project; and David Larson. Also named as defendants were J. Elliott Construction Company (Elliott Construction), sued in its capacity as general contractor, as well as Edward Hancock, doing business as Southland Properties, who was the real estate broker involved in marketing the project.[2]

The defendants cross-complained against several subcontractors who worked on the project.

Elliott Construction, the principal in the case, had purchased various insurance policies which provided coverage from June 1980 through the end of 1990. Elliott Construction also purchased excess liability insurance covering portions of this same time period. The other petitioners in this writ proceeding were also purportedly covered by these same insurance policies.

The PCHOA claim was tendered to all of the liability insurers. Most of the insurers, real parties in interest in this proceeding, either denied coverage or refused to defend petitioners in the action or both.[3]

The parties pursued extensive settlement negotiations. Retired Justice McCloskey presided over numerous settlement conferences. Ultimately, a comprehensive settlement was reached with the principal defendants. That settlement provided for a cash payment of $2.75 million and a stipulated judgment for $9 million in favor of PCHOA and against the developer's three general partners and against Elliott Construction. The settlement included a covenant not to execute against the assets of the settling defendants as well as an assignment of all rights defendants had against the nonsettling subcontractors. Under a separate agreement, Elliott Construction assigned to PCHOA its causes of action against its insurers which refused to defend, indemnify or contribute to the settlement agreement.

The cash portion of the settlement was to be funded by nearly $2 million from insurers Highlands Insurance and Truck Insurance; $590,000 collected from settlements with various subcontractors; and, $200,000 from the settling defendants personally.

---

[2] Of the named defendants below, Pacific Estates, Inc., David Larson and Edward Hancock, *doing business as Southland Properties, are petitioners in this proceeding.*

[3] Real parties in interest in this writ proceeding are insurers American Specialty Insurance Company, Argonaut Insurance Company, Charter Oak Fire Insurance Company, Federal Insurance Company, Firemen's Insurance Company, Navigators Insurance Company, Scottsdale Insurance Company, Topa Insurance Company, and Travelers Indemnity Company, as well as the plaintiff below, PCHOA.

A necessary condition of settlement was a trial court determination pursuant to section 877.6 that the settlement was made in good faith.[4] PCHOA filed a motion in the trial court for a determination the settlement was made in good faith. The motion was initially opposed by two of the nonsettling subcontractor cross-defendants. Written opposition to PCHOA's motion for a good faith determination was also filed on behalf of many of the nonparticipating insurers. The insurers' motions were generally uniform in urging the trial court to either deny the good faith settlement motion on the basis it was the product of collusion between PCHOA and the settling defendants or, in the alternative, to specifically find the terms of any good faith settlement were not binding upon nonparty, nonparticipating insurers. Specifically, the insurers objected to the stipulated judgment of $9 million and did not want the stipulated judgment to have any res judicata or collateral estoppel effect on them in any other proceeding. After additional briefing, the trial court appointed Retired Judge Leon Savitch as referee to submit recommendations evaluating the noncash elements of the settlement. In his report, Judge Savitch made reference to a pending related action by Elliott Construction against the nonparticipating insurers and noted, that under the terms of the settlement agreement, the $9 million stipulated judgment with the covenant not to execute had no value for the settling defendants and could only affect the nonparticipating insurers.

The trial court requested further briefing on whether its ruling should expressly limit its application to the nonsettling cross-defendants so as to preclude any res judicata or collateral estoppel effect on the nonparticipating insurers. The trial court temporarily consolidated the two actions and encouraged the parties to pursue a global settlement. Ultimately, the trial court

---

[4]Section 877.6 provides in pertinent part:

"(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice thereof . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

"(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. . . ."

vacated its consolidation order when it issued its ruling denying the motion for determination of a good faith settlement.[5]

In denying the motion, the trial court found "The only impediment to granting the motion is the collusive and bad faith effects upon the nonsettling [] insurers, including: 1) The circumventing of the requirement that the primary insurance policies be exhausted; and, 2) the binding res judicata effect of an inflated judgment.

"On the other hand, the remaining *Tech-Bilt* [*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 (213 Cal.Rptr. 256, 698 P.2d 159)] factors present no obstacle: 1) There is not necessarily a collusive effect upon the nonsettling subcontractors; 2) the actual value of the settlement falls within a rough approximation of Plaintiff's total recovery and the settlors' proportionate liability; 3) the amount 'paid' by the Defendants or on their behalf is sufficient when the Court takes into account the values of the noncash portions of the settlement; 4) the recognition that the settlors should pay less in settlement than after trial supports a finding that the settlement is in good faith; 5) allocation of the settlement proceeds among the Plaintiffs is not applicable here, where one Plaintiff sues as a homeowners' association; and, 6) the settlors' financial condition and insurance policy limits tend to militate against a good faith finding in that Defendants could pay substantially more, but given the amount 'paid' in proportion to liability, is not alone determinative."

The court concluded that except for a technical deficiency with the settlement and the potential impact on the nonparticipating insurers, it could have approved the settlement as made in good faith as regarded the nonsettling subcontractor cross-defendants. The court explained why it felt constrained to deny the motion in its entirety. "The Court perceives that it is compelled by one case to take the effects upon the [] insurers into consideration; *Diamond Heights Homeowners Assn.* v. *Natl. Amer. Ins. Co.* (1991) 227 Cal.App.3d 563, 583 [277 Cal.Rptr. 906] (Excess insurers which had due process opportunity to participate may be bound by a good faith

[5]Consolidation of the bad faith action against the insurers with the underlying action for construction damages against the insureds was improper under Evidence Code section 1155 which provides:

"Evidence that a person was, at the time a harm was suffered by another, insured wholly or partially against loss arising from liability for that harm is inadmissible to prove negligence or other wrongdoing."

The effect of this statute is to prevent joint trials against both a liability insurer and its insured. (See, e.g., *Rose* v. *Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 718 [3 Cal.Rptr.2d 483] [insurer may not be joined in the action against the insured].) For this reason we must reject petitioners' request for reconsolidation of the bad faith action with the underlying case for construction defects.

determination *both under California Code of Civil Procedure Section 877.6 and principles of res judicata and collateral estoppel.*). But for the *Diamond* holding, the Court would have been willing to grant the motion for good faith settlement by reserving any *res judicata* effect upon the nonsettling insurers, such that they could not be adversely affected by a good faith determination. However, *Diamond, supra*, makes clear that insurers are bound by a good faith determination by operation of section 877.6.

"*Diamond* may be subject to question. *Cf., Singer Co.* v. *Sup. Ct.* (1986) 179 Cal.App.3d 875 [225 Cal.Rptr. 159] (Nonparties are not bound by a good faith determination). However, it is not a proper function of a trial court to question appellate rulings, and hence absent further binding appellate guidance, this Court is compelled to follow the rule in *Diamond* defining [] insurers as statutory 'co-obligors' and to consider the effects upon the nonsettling insurers in ruling according to the *Tech-Bilt* factors." (Italics in original.)

Finally the court concluded, when taking the insurers' interests into account, the settlement was collusive and not made in good faith. "The unfairness arises because the Court finds that the amount of the stipulated judgment inflates the true value of the damages or the ultimate recovery to [PCHOA] as against the settling Defendants, and gives Plaintiff a potential windfall of bad faith damages against the [] insurers, based upon artificial contrivances."

The court found the nonparty, nonparticipating insurers proved the stipulated judgment was unfair to them and denied the motion. Petitioners sought review of the trial court's decision to deny the motion in its entirety based on its interpretation of the *Diamond Heights* decision. We issued an alternative writ to consider the merits of the petition.

## DISCUSSION

### I. *The Decision in Diamond Heights.*

In *Diamond Heights Homeowner Assn.* v. *National American Ins. Co., supra,* 227 Cal.App.3d 563 (*Diamond Heights*), a condominium association sued the project developer and general contractor for damages for construction defects. The parties ultimately entered into a settlement of the underlying litigation which provided for a stipulated judgment of $2,671,000. The cash portion of the settlement included $100,000 from the architect and two subcontractors and $1,607,781.82 from the developer's and general contractor's primary liability insurance carriers. The noncash portion of the settlement was an assignment of rights to the plaintiff against their noncontributing insurance carriers.

The defendants moved for an order confirming the settlement was made in good faith. At least one of the noncontributing insurers opposed the motion. The trial court nevertheless found the settlement was free of collusion, made in good faith and confirmed the settlement.

The plaintiff association, as assignee of rights against the three noncontributing insurers, brought suit to recover the nearly $1 million difference between the stipulated judgment and the cash it had received. The insurers sought summary judgment based on various exclusionary provisions in their respective policies of insurance. The insurers' motions were granted and the association appealed.

The Court of Appeal, First Appellate District, found summary judgment was appropriately granted in favor of two of the insurers based on exclusionary provisions for indemnity for "work product" deficiencies.

However, the judgment in favor of Central National Insurance Company of Omaha, an excess insurer, was reversed. During settlement negotiations the excess insurer was advised by counsel for the primary insurer the proposed settlement would exhaust the primary coverage and invade excess coverage. The excess insurer was invited to participate. It responded by offering $150,000 toward the settlement. In the later proceeding brought by the association, the excess insurer moved for summary judgment on the basis of a "work product" exclusion (later found invalid) and on the basis the stipulated judgment entered into without its consent violated the "no action" clause in its policy.[6]

The trial court agreed the excess insurer was not compelled to agree to the settlement agreement because " 'When the primary carriers agreed to pay their policy limits, plaintiff did not demand that Central either approve the settlement or accept the defense of the action. Since Central objected to the

---

[6]A "no action" clause provides that an insurer may be sued directly if the amount of the insured's obligation to pay was finally determined either by judgment against the insured after actual trial, or by written agreement of the insured, the claimant and the insurance company.

In *Rose* v. *Royal Ins. Co.*, *supra*, 2 Cal.App.4th 709, we gave effect to a "no action" clause in the insurer's policy. In that case the insurer provided a defense for its insured under a full reservation of rights to dispute coverage. Independent counsel was provided to defend the insured in the underlying action. The litigation was settled when the plaintiff and the insured agreed to a stipulated judgment negotiated by the insured's independent counsel. In a later action by the plaintiff against the insurer, we held the insurer was not bound by the stipulated judgment entered into without its approval or consent and while the insured was being defended by the insurer.

Although relied on by several real parties in interest, it is unclear what application that decision might have in the present case where real parties did not provide a defense under a reservation of rights or otherwise.

settlement but was not asked to assume the defense, there was no waiver or estoppel with respect to the ["no action" provision] of the policy.' " (*Diamond Heights*, *supra*, 227 Cal.App.3d at pp. 576-577.)

The Court of Appeal reviewed the law concerning the relative responsibilities of primary and excess insurers and concluded the primary insurer had no right to demand the excess insurer take over defense responsibilities or approve the settlement agreement. However, the excess insurer's policy gave it the option to waive its provisions and consent to take over the defense from the primary insurer and continue the proceeding instead of settling. Consequently, it was an unresolved issue of material fact whether the excess insurer was afforded a reasonable opportunity to undertake the defense prior to settlement.

The court went on to discuss whether an excess insurer could be bound by a settlement found to be made in good faith where the settlement amount exhausts primary coverage and invades excess coverage. The court concluded a primary insurer may negotiate a good faith settlement of a claim in an amount which invades excess coverage and that that settlement will be binding on the excess insurer, even without its consent and despite its "no action" clause, where the excess insurer unreasonably withholds consent to a reasonable settlement and at the same time fails to offer to undertake the defense. In support of its conclusion, the court drew an analogy to the situation where a primary insurer wrongfully denies coverage or a defense, or unreasonably rejects a settlement offer.[7] The court found in those situations, an insured is entitled to make a reasonable settlement of the claim in good faith and then sue for reimbursement despite policy provisions prohibiting settlement without the express consent of the insurer. (*Diamond Heights*, *supra*, 227 Cal.App.3d at p. 581.)

The court found the insurer's motion for summary judgment did not dispose of the material factual issue whether the excess insurer in this case had waived any right to rely on its "no-action" clause by wrongfully refusing a reasonable settlement offer while at the same time failing to offer to undertake the defense. The Court of Appeal concluded summary judgment was improperly granted and reversed the judgment.

However, the court concluded the "good faith" statute itself provided the rationale why the stipulated judgment should be binding on the excess

[7] The *Diamond Heights* court relied on the decisions in *Phoenix Ins. Co.* v. *United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1526 [235 Cal.Rptr. 185] and *Northwestern Title Security Co.* v. *Flack* (1970) 6 Cal.App.3d 134, 146 [85 Cal.Rptr. 693], for this proposition. (See also *Kershaw* v. *Maryland Casualty Co.* (1959) 172 Cal.App.2d 248, 257 [342 P.2d 72].)

insurer in this case. The court stated "If the excess insurer asserts the right to object [at a good faith confirmation hearing pursuant to section 877.6], and is accorded due process in presenting its objections to the settlement, and the trial court confirms the settlement as made in good faith, the excess insurer stands in the position of a 'co-obligor' barred from making a claim of bad faith against the settling parties. (§ 877.6, subd. (c).) The excess insurer's remedy, if aggrieved by the good faith confirmation, is to petition the court for writ of mandate. (§ 877.6, subd. (e).)" (*Diamond Heights, supra,* 227 Cal.App.3d at p. 582.)

The court found the excess insurer filed objections to the settlement and had an opportunity to present evidence and argument and fully litigate the issues of good faith and reasonableness at the good faith hearing. However, the excess insurer did not seek review of the confirmation order. The court found under these circumstances the excess insurer's "claims of bad faith and collusion in the instant action are therefore barred as a matter of law under section 877.6. They are also barred under principles of res judicata and collateral estoppel, where [the excess insurer] had an identity of at least certain interests with its insured, and had the opportunity to present its objections to the settlement in protection of its own interests." (*Diamond Heights, supra,* 227 Cal.App.3d at p. 583.)

The trial court in the case at bar declined to confirm the settlement as made in good faith based on the *Diamond Heights* court's interpretation of the effect of a good faith determination on nonparticipating insurers. Petitioners and real parties insurers alike contend Diamond Heights was erroneously decided and petition this court for a peremptory writ of mandate ordering the trial court to reconsider its ruling in an attempt to preserve an "arduously-negotiated" settlement.

II. *The Statutory Language of Code of Civil Procedure Section 877.6 Provides No Authority to Treat Insurers as "Co-obligers" or "Parties" to the Underlying Litigation.*

 The 1980 Legislature enacted section 877.6 which provided a hearing mechanism for determination of "the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors" (subd. (a)).

Thereafter, several cases raised the issue of who could be deemed to be a "tortfeasor" or "party" under section 877.6 and therefore whose interests needed to be considered in determining whether a settlement was made in good faith which, under the statute, would have the effect of barring any

further claims for contribution or indemnity from nonsettling tortfeasors. In *City of Sacramento* v. *Gemsch Investment Co.* (1981) 115 Cal.App.3d 869, 877 [171 Cal.Rptr. 764], the court concluded the statute referred to "one or more tortfeasors claimed to be liable for the same tort." In *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45 [200 Cal.Rptr. 136], the court found the statute applied to cross-defendants as well: "Code of Civil Procedure sections 877 and 877.6 apply where the settling tortfeasor is merely a cross-defendant in an action for comparative or partial equitable indemnity and is not a defendant in the main action itself." (*Widson, supra,* 153 Cal.App.3d at p. 57.) The court in *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 891 [225 Cal.Rptr. 159], expanded the term "tortfeasor" to include "likely defendants" although unnamed as a party in either a complaint or cross-complaint. No reported decision we are aware of defining the parameters of the statutory definition of "tortfeasor" has considered an insurer of a tortfeasor defendant, cross-defendant or "likely defendant" a "tortfeasor" or party equally bound by a good faith determination under section 877.6.

In 1987 the Legislature expanded the scope of section 877.6 to include good faith determinations of settlements of contract actions. The 1987 amendment modified subdivision (a) to provide that "Any party to an action wherein it is alleged that two or more parties are joint tortfeasors *or co-obligors on a contract debt* shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or *co-obligors.* . . ." (Italics added.) Subdivision (c) of section 877.6, which declares the substantive right of discharge from liability, now provides a good faith determination "shall bar any other joint tortfeasor *or co-obligor* from any further claims against the settling tortfeasor *or co-obligor* for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (Italics added.)

We believe the purpose and intent of the 1987 legislation amending section 877.6 to include "co-obligors on a contract debt" was to provide a similar efficient mechanism to determine the good faith of any settlement of a multiparty contract action. Nothing in the statute indicates anything to the contrary. Although there are no reported decisions construing the phrase "co-obligors on a contract debt," the plain language of the statute dictates the interpretation of this phrase refers to parties to a contract dispute which itself is the subject of the underlying litigation.

This interpretation of the statute is supported by the legislative history of the 1987 amendment. A report prepared for the Assembly Subcommittee on

the Administration of Justice noted the amendment "is sponsored by the State Bar Conference of Delegates and was proposed by the Orange County Bar Association. [According to its sponsors,] the primary rationale for the bill is 'to encourage settlements in contract actions.' " The report explained the bill "extends the existing provisions of law relating to the good faith settlements of joint tortfeasors to co-obligors on a contract debt and, also, provides that: [¶] . . . [¶] 2) The bill only applies to contracts made on or after January 1, 1987." (Rep. to Assem. Subcommittee on the Admin. of Justice on Sen. Bill No. 1395 (Aug. 19, 1987).) A report prepared for the Senate Rules Committee also described the bill as applying "the tort contribution and good faith settlement statutes to the settlement of obligations arising out of a joint contract." The report declared the purpose of the bill was "to encourage settlements of contractual disputes involving joint obligors." (Rep. to Sen. Rules Com. on Sen. Bill No. 1395 (May 29, 1987).)

Senator Quentin L. Kopp was the legislative sponsor of Senate Bill No. 1395. In his letter urging then-Governor George Deukmejian's approval of the measure, Senator Kopp confirmed the purpose of the amendment was to extend the provisions for good faith determinations of settlements of tort actions to contract actions as well. The Senator wrote that "By extending the principles of tort law regarding settlement of claims among tort-feasors to the contract case and providing that a co-obligor who settles with a claimant in good faith is discharged from liability for contribution to other co-obligors of the debt, this bill seeks to encourage settlement of claims in contract actions." (Letter of Senator Kopp to Governor Deukmejian dated Sept. 1, 1987.)

In *Diamond Heights* the underlying action was a tort, not a dispute over a contract debt. Consequently, we disagree with the *Diamond Heights* court an insurer of a tortfeasor can become a "co-obligor on a contract debt" within the meaning of section 877.6.

Because we conclude an insurer of a tortfeasor is not a "co-obligor" for purposes of section 877.6, we further disagree with the *Diamond Heights* court the insurer is barred from making a claim of bad faith against the settling parties because of its status as a "co-obligor," either because it participated at the good faith hearing on the settlement of the tort action or otherwise.

III. *Nonparties to a Good Faith Confirmation Hearing Are Not Conclusively Bound by a Stipulated Judgment by Principles of Res Judicata and Collateral Estoppel.*

In *Diamond Heights* the court found the excess insurer was barred as a matter of law from claiming the settlement was made in bad faith or was

collusive because it failed to petition for a writ of mandate under section 877.6 to challenge the good faith determination. The court also found the insurer was bound by principles of res judicata and collateral estoppel because it participated at the hearing, failed to seek review of the order and had "at least certain interests with its insured." (*Diamond Heights, supra,* 227 Cal.App.3d at p. 583.)

We believe the *Diamond Heights* court construes the statutory provisions too broadly. A fair reading of the statute indicates only parties to the underlying litigation may challenge a trial court's determination of the good faith of a settlement. Section 877.6 provides for review of any adverse determination by providing in subdivision (e) that "any *party* aggrieved by the determination may petition the proper court to review the determination by writ of mandate." (Italics added.)

It is true subdivision (d) of section 877.6 also uses the language "party" in providing that "The party asserting the lack of good faith shall have the burden of proof on that issue." However, insurers are routinely allowed to specially appear at the hearing to object to a determination a settlement was made in good faith. While the differing treatment may appear superficially inconsistent, we note the trial court is granted wide discretion under section 877.6, subdivision (b) to receive any "other evidence," in addition to affidavits, to aid in its decision. A trial court may well determine input from the parties' insurers is necessary to review the insurance policy limits of the settling tortfeasors—one of the relevant inquiries in making a good faith determination. (See *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159].)[8] However, a temporary appearance for this purpose by potentially affected insurers cannot transform them into "parties" to the underlying tort action.

If a nonparty to the underlying action is unable to seek review of an adverse decision, that nonparty is denied adequate procedural protections from potentially erroneous decisions. As a result, an unreviewable decision can provide no basis for later imposing on nonparties the preclusive effects of res judicata or collateral estoppel as to issues not fully litigated in any meaningful sense. (See Rest.2d Judgments, § 28 (1), com. (a) [relitigation of an issue is not precluded in a subsequent action when the party against

[8]The *Tech-Bilt* factors include "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at p. 499.)

whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action].)

Also, and contrary to the observations in *Diamond Heights*, a section 877.6 hearing may not be "an appropriate setting" in all cases to fully litigate all aspects of the good faith of a settlement if that determination could have conclusive, binding effects on the parties' insurers. To "present evidence and arguments, and fully litigate the issues of good faith and reasonableness" at the risk of otherwise being bound, nonparties would be obliged to at least review all discovery undertaken in the underlying action. With such non-party status, obtaining such information may be difficult. Objecting nonparties may also need to conduct their own discovery to demonstrate the collusive nature or inflated damage amount of the proposed settlement.

Such discovery efforts may also prejudice insureds if the insurer is forced to present evidence detrimental to the insured's defense of the underlying action. Moreover, in a case such as this, where the damage is alleged to be continuing, insurers may be forced to litigate a panoply of coverage issues. For example, in order to determine the extent of the defendants' insurance coverage, it may be critical to establish, given the different policies and coverage periods, exactly which policies were on the risk. Thus, a good faith hearing could become protracted and consume as much time and resources as a full coverage trial. Extensive discovery and lengthy hearings will unnecessarily complicate and delay resolution of the underlying action. However, such procedural protections would have to be afforded nonparties in order to have any finding binding on them in future proceedings. (See Rest.2d Judgments, § 29 (2), com. (d) [trial court should consider whether forum in second action affords party against whom preclusion is sought procedural opportunities that were not available in first action and could likely result in issue being differently determined].)

Because full discovery and full presentation of evidence and argument is not guaranteed or routinely allowed in all section 877.6 hearings and because nonparties may not seek review of a good faith determination, we disagree a determination a settlement was made in good faith should conclusively bind a nonparty insurer in a later action in the absence of these procedural protections.

On the other hand, we agree a good faith finding by a trial court should have some evidentiary value in a later action. In a somewhat analogous situation, the Supreme Court found an insured should be given the benefit of an evidentiary presumption in a later suit against an insurer who wrongfully denies a defense or indemnity where the insured enters into a settlement in good faith and actually pays the settlement. As explained by our highest court "if an insurer 'erroneously denies coverage and/or improperly refuses

to defend the insured' in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement . . . .

"Further, if an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297], internal citations and quotations marks omitted; see also *Continental Casualty Co.* v. *Royal Ins. Co.* (1990) 219 Cal.App.3d 111 [268 Cal.Rptr. 193].) The *Isaacson* court explained the presumption only applies, however, where the insurer has "wrongfully refused to cover or defend a claim, leaving the insured to mount his own defense or suffer a default." (*Isaacson* v. *California Ins. Guarantee Assn., supra,* 44 Cal.3d at p. 793.)

In our view, an expansive application of this doctrine would at most allow a settlement found to be made in good faith, where the insured remains personally liable (as apparently was the situation in *Diamond Heights*), to be presumptive evidence of liability and the amount of damages in a later action against an insurer who wrongfully withheld indemnity or a defense or unreasonably withheld consent to a reasonable settlement offer.[9]

IV. *The Issue of the Good Faith of the Settlement in This Case Must Be Reconsidered in Light of This Opinion.*

In this case, the trial court indicated it was inclined to grant the motion for good faith determination with respect to the nonsettling subcontractor cross-defendants based on the offsets to which they would be entitled from the bad

---

[9]In the context of this case, where the defendants personally are to pay only a fraction of the total amount of the stipulated judgment and are protected from further personal liability by the express terms of the settlement agreement, it remains to be decided what effect a good faith determination would have in later proceedings on that judgment. (Compare *Singer Co.* v. *Superior Court, supra,* 179 Cal.App.3d 875 ["likely defendant" brought into action only after a good faith determination of settlement not bound by that determination] with *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1114 [7 Cal.Rptr.2d 131] [stipulated judgment with covenant not to execute is not assignable] and *Wright* v. *Fireman's Fund Ins. Co.* (1992) 11 Cal.App.4th 998 [14 Cal.Rptr.2d 588] [stipulated judgment with covenant not to execute unenforceable against insurer in subsequent proceeding]; but see *Xebec Development Partners, Ltd.* v. *National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501 [15 Cal.Rptr.2d 726] [stipulated judgment with covenant not to execute may be entitled to evidentiary presumption in later action by assignee against insurer].)

faith actions against the nonparticipating insurers. In this opinion we hold the nonparticipating insurers are not conclusively bound by a stipulated judgment by principles of res judicata or collateral estoppel. ■ We further hold the statutory provisions of section 877.6 provide no authority for binding nonparticipating insurers to a stipulated judgment as "co-obligors on a contract debt." Because our holding may affect the trial court's judgment in determining whether the proposed settlement was made in good faith, reconsideration of the motion is warranted.

On the other hand, there is nothing in the *Diamond Heights* decision which would preclude a finding a good faith determination should be limited to the actual parties to the controversy. ■ Thus, if the court concludes the settlement warrants a determination of good faith but further concludes its ruling should be limited in its effect due to the particular circumstances or equities of the case, it is within the court's discretion to expressly limit its findings or the application of its ruling. (See, e.g., *Stark* v. *Coker* (1942) 20 Cal.2d 839 [129 P.2d 390] ["when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining."]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgments, § 266, p. 707.) Alternatively, the parties can agree to restrict the scope of a judgment by expressly withdrawing certain issues from the stipulated judgment. (*Ellena* v. *State* (1977) 69 Cal.App.3d 245 [138 Cal.Rptr. 110]; see also Rest.2d Judgments, § 27, com. (e).)[10]

## DISPOSITION

Let a peremptory writ of mandate issue to the Superior Court of Los Angeles County directing it to vacate its order of September 23, 1992, denying the motion for determination of good faith settlement and to reconsider the motion in light of this opinion. The alternative writ is discharged.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[10]In view of our disposition of this matter, we overrule Scottsdale Insurance Company's demurrer to the petition.