[No. B096605. Second Dist., Div. Seven. Dec. 15, 1997.]

ROHR INDUSTRIES, INC., Cross-complainant and Respondent, v. FIRST STATE INSURANCE COMPANY, Cross-defendant and Appellant; CNA CASUALTY OF CALIFORNIA et al., Cross-defendants and Respondents.

## Counsel

Smith, Brennan & Dickerson, Philip E. Smith, Joseph G. Harraka, Jr., Michael W. Ellison and Caroline McIntyre for Cross-defendant and Appellant.

No appearance for Cross-complainant and Respondent.

Sonnenschein, Nath & Rosenthal, Michael A. Barnes, John Leland Williams and Gregory L. Smith, Morris, Polich & Purdy, Steven M. Crane and Douglas J. Collodel for Cross-defendants and Respondents.

## Opinion

**JOHNSON, Acting P. J.**—An insurance company appeals from orders confirming good faith settlements between its insured and two other insurance companies. The settlements purported to bar other claims, present and future, against the settling companies. We conclude the trial court's orders were not authorized by statute and in addition were beyond the court's equitable powers. Accordingly, we reverse the orders barring the nonsettling insurer from asserting future claims against the settling insurers for equitable contribution or indemnity or related claims and remand with directions.

### Facts and Proceedings Below

This is an insurance dispute between the liability insurers of Rohr Industries, Inc. (Rohr), an aircraft equipment manufacturer. First State Insurance Company (First State) is one of its insurers. First State issued three consecutive one-year excess liability policies to Rohr covering the period from August 1, 1982, until August 1, 1985. Several government agencies and

private parties sued or cited Rohr for dumping toxic waste on two parcels of land known as the Stringfellow Hazardous Waste Disposal Site (Stringfellow Site), and its manufacturing facility located in Riverside, California (Riverside Site).

Two of the insurance companies which issued policies to Rohr, United Pacific Insurance Company (United Pacific) and Planet Insurance Company (Planet), filed an action against Rohr, First State, CNA Casualty of California (CNA), and 12 other Rohr insurers. United Pacific and Planet sought a declaration they had no duty to defend or indemnify Rohr in the underlying actions, or in the alternative, sought contribution from Rohr's other insurers.

In response Rohr cross-complained against each of the insurers sued by United Pacific and Planet and added several other insurers, including Transport Insurance Company (Transport). Rohr asserted claims for declaratory relief against Transport and claims for breach of contract and "bad faith" against First State and CNA. Rohr also alleged it had been ordered by the California Regional Water Quality Control Board (CRWQB) to prepare and implement a remediation plan to remediate the effects of alleged groundwater contamination present at the Riverside Site. Rohr alleged it would cost $15 million to comply with the remediation orders.

CNA issued Rohr an excess liability policy covering the period 1971-1972 and provided primary insurance to Rohr for two consecutive three-year policies from December 13, 1975 to August 1, 1981. In May of 1995, CNA reached a settlement with Rohr in which Rohr released CNA from all claims arising out of its cross-complaint, as well as any and all claims arising from Rohr's use of the Stringfellow Site and Riverside Site.

CNA then moved for an order determining the settlement to be in good faith and barring the cross-complaint, or in the alternative, a determination of good faith settlement pursuant to Code of Civil Procedure sections 877 and 877.6.[1] First State opposed the motion. The trial court entered its order confirming the settlement as being in good faith pursuant to section 877 and 877.6, as well as in its inherent power. The order purported to bar all claims by Rohr's insurers, third parties or their insurers for equitable contribution, indemnity or similar claims.

Transport's predecessor in interest, Transport Indemnity Company, issued three excess liability policies to Rohr for the periods from April of 1973 until December of 1975 and from August 1, 1984, until August 1, 1985. In June of 1995, Transport entered into a settlement agreement with Rohr in

---

[1]All further statutory references are to the Code of Civil Procedure.

which Rohr released Transport from all claims arising from Rohr's use of the Stringfellow and Riverside Sites.

Transport then moved for a good faith settlement determination under sections 877 and 877.6. First State again opposed the motion. On August 10, 1995, the trial court found the settlement was made in good faith pursuant to sections 877 and 877.6, as well as pursuant to its inherent powers. The trial court also barred all third parties, including their insurers, and each and every insurer of Rohr, from making any claim against Transport for contribution, indemnity or other relief arising out of or related to the underlying actions.

It is disputed whether future suits against Rohr are likely to occur. First State claims there is no way of determining exactly how long the present CRWQB orders will be in effect, how much remediation costs Rohr will incur in the future in complying with the present CRWQB orders, or if the CRWQB or other governmental agency will issue other orders in the future. In addition, First State claims Rohr may be liable to third parties in the future as a result of contamination present at the Riverside Site which is traveling offsite. Meanwhile, Transport and CNA view the matter as largely closed.

First State appeals from the trial court's orders finding the settlements were made in good faith within the meaning of sections 877 and 877.6 and invoking its inherent power to preclude further claims against them for equitable contribution or indemnity, or for any other claim arising out of, or relating to, the underlying actions.

## DISCUSSION

I.   *The Good Faith Settlement Order Barring First State's Claims Against the Settling Insurers Is Appealable.*

Transport contends this court lacks jurisdiction to entertain this appeal and claims the purported appeal for the nonappealable orders must be dismissed. (§§ 901, 902, 904, 904.1) Specifically, Transport claims: (1) First State has failed to follow the statutorily prescribed means of obtaining review by way of extraordinary writ as provided in section 877.6, subdivision (e); (2) a good faith determination order is not appealable because it is an interlocutory, rather than a final, order; and (3) First State has not been aggrieved and thus lacks standing to appeal. As discussed below, we conclude First State has standing to appeal from this appealable order.

Transport contends the only means of obtaining appellate review of a good faith settlement determination is by petition for a writ of mandate. This

is because section 877.6, subdivision (e) states: "When a determination of good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow."

Therefore, any party wishing to challenge the merits of a good faith settlement determination can only do so in the statutorily prescribed manner by filing a petition for writ of mandate. Appellate courts have dismissed purported appeals when aggrieved parties have failed to do so. Transport cites various cases in support of this proposition and cites cases illustrating the public policy in promotion of settlements under sections 877 and 877.6. (Citing *Housing Group* v. *Superior Court* (1994) 24 Cal.App.4th 549 [29 Cal.Rptr.2d 460]; *Barth-Wittmore Ins.* v. *H.R. Murphy Enterprises, Inc.* (1985) 169 Cal.App.3d 124 [214 Cal.Rptr. 894]; *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498].) But these cases involved either actual "joint tortfeasors" or "co-obligors on a contract debt" who were challenging the merits of a finding of a good faith settlement, and did not concern the legality of applying sections 877 and 877.6 in the first instance as in the case at bar.[2]

The only case Transport cites in support of its argument which involves multiple insurers is *Diamond Heights Homeowners Assn.* v. *National American Ins. Co.* (1991) 227 Cal.App.3d 563, 583 [277 Cal.Rptr. 906]. There the court pointed out: "Central [National Insurance Company of Omaha], as an aggrieved party, failed to avail itself of the right to challenge the confirmation order by petitioning for writ of mandate. Central's claims of bad faith and collusion in the instant action are therefore barred as a matter of law under section 877.6" for failure to petition for review by writ of mandate.

However, the decision in *Diamond Heights Homeowners Assn.* v. *National American Ins. Co., supra,* 227 Cal.App.3d 563 is distinguishable from the present case. *Diamond Heights* did not raise the issue whether section 877.6 applies to multiple insurers. There the challenge to the good faith settlement determination was "on the grounds that the amount of the stipulated judgment was unreasonable and appeared to be the result of collusion between plaintiffs and defendants." (*Id.* at 575.) Thus, a party wishing to challenge

[2]Section 877.6 provides in pertinent part, "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005."

the merits of a "good faith" determination must do so via a petition for writ of mandate as prescribed by statute. However, when a party wishes to challenge the legality or appropriateness of extending the applicability of sections 877 and 877.6 to settlements not involving "joint tortfeasors" or "co-obligors on a contract debt," as the terms are used in these statutes, they may do so by way of appeal. When an appeal raises a challenge to the applicability of sections 877 and 877.6 to multiple insurer settlements the courts have exercised their jurisdiction to review the appeal. (See *Topa Ins. Co.* v. *Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331 [46 Cal.Rptr.2d 516]; *Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 29 Cal.App.4th 435 [34 Cal.Rptr.2d 520].)

Transport further argues a good faith determination is a nonappealable interlocutory order. Transport cites *Chernett* v. *Jacques* (1988) 202 Cal.App.3d 69 [248 Cal.Rptr. 63] in support of its contention. In *Chernett*, this court dismissed a purported appeal from an order sustaining a motion for determination of a good faith settlement. We reiterated what the court said in *Barth-Wittmore Ins.* v. *H.R. Murphy Enterprises, Inc., supra*, 169 Cal.App.3d 124, 130: " '[a] determination that a settlement has been made in good faith is an interlocutory decree. Although section 904.1 [Code Civ. Proc.] sets forth several specific instances in which an interlocutory judgment may be appealed, the good faith determination is not among them.' " (*Chernett* v. *Jacques, supra*, 202 Cal.App.3d at p. 71.) Just as in *Diamond Heights*, the appellant in *Chernett* challenged the merits of a finding of good faith, and not whether sections 877 and 877.6 could be used by the court to bar or dismiss nonsettling insurers' cross-claims against settling insurers. (*Chernett* v. *Jacques, supra*, 202 Cal.App.3d at p. 71.) Accordingly, the decision in *Chernett* v. *Jacques, supra*, 202 Cal.App.3d 69 is not controlling.

Transport also argues First State is not an "aggrieved" party and thus lacks standing to appeal. While it is true a party must be aggrieved in order to appeal,[3] it is incorrect to state First State is not "aggrieved." ▪ Any person "having an interest recognized by law in the subject matter of the judgment, . . . is a party aggrieved and entitled to be heard on appeal" if his interest is injuriously affected by the judgment. (*Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633].)

▪ Transport contends the order will not have an effect (and thus First State will not be aggrieved) unless First State attempts to seek contribution from Transport and is blocked from doing so by the trial court's orders. This is incorrect. The trial court's order has an effect the moment it is issued.

---

[3]Section 902 provides: "Any party aggrieved may appeal in the cases prescribed in this title. . . ."

First State or any other third party will take note of the orders when it contemplates bringing a suit against Transport in this matter. The orders would have a discouraging or chilling effect on contemplated meritorious future claims. The orders negatively affect First State's ability to seek contribution or indemnity from Transport and CNA, therefore First State is "aggrieved."

We therefore conclude First State has standing to appeal the trial court's appealable order.

II. *The Trial Court Does Not Have the Authority to Bar or Dismiss Claims of Nonsettling Insurers Based on a Determination of Good Faith Settlement Between One or More Co-insurers and the Insured.*

■ The remaining issue is whether a trial court can utilize sections 877 and 877.6 or invoke its inherent authority to make a good faith determination of settlements made by one or more insurers with the insured which bars nonsettling insurer(s) from seeking contribution and/or indemnity from the settling insurer(s).

Section 877 provides: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.

"(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

". . . . . . . . . . . . . . . . . . . . . . .

"(d) This section shall not apply to a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment given to a co-obligor on an alleged contract debt where the contract was made prior to January 1, 1988."

Section 877.6 provides in pertinent part, "(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the

good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005."

Two cases mentioned previously, *Topa Ins. Co.* v. *Fireman's Fund Ins. Companies, supra,* 39 Cal.App.4th 1331 and *Hartford Accident & Indemnity Co.* v. *Superior Court, supra,* 29 Cal.App.4th 435, as well as two other cases, *Herrick Corp.* v. *Canadian Ins. Co.* (1994) 29 Cal.App.4th 753 [34 Cal.Rptr.2d 844] and *Pacific Estates, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1561 [17 Cal.Rptr.2d 434], are instructive on the issue whether sections 877 and 877.6 are applicable to settlements involving multiple insurers of an insured where one or more insurers reaches a settlement with the insured.

As the court in *Herrick* stated, "[n]othing in the good faith settlement statutes suggests they apply to litigants other than 'joint tortfeasors' . . . or 'co-obligors on a contract debt.' The question thus arises whether liability insurers fit either category." (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th 753, 759-760.) The court went on to state, "As noted in *Pacific Estates, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1561, 1571 [17 Cal.Rptr.2d 434], no reported decision has defined tortfeasor as the word is used in the good faith settlement statutes, to include the *insurer* of a tortfeasor." (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 760, italics in original.)

Of all the cases which have examined the issue whether insurers are "co-obligors on a contract debt," all but one have found insurers not to be "co-obligors on a contract debt." The case which found insurers to be similar to "co-obligors on a contract debt" is *Diamond Heights Homeowners Assn* v. *National American Ins. Co., supra,* 227 Cal.App.3d 563.

The Court of Appeal in *Diamond Heights Homeowners Assn.* v. *National American Ins. Co., supra,* 227 Cal.App.3d 563, stated if the trial court confirmed the good faith of the settlement, "the excess insurer stands in the position of a 'co-obligor' barred from making a claim of bad faith against the settling parties. [Citation.]" (*Id.* at p. 582.) It did not elaborate on what it meant by, "stand in the position" of a co-obligor. Other courts have disagreed with this statement in *Diamond Heights.* "It has been pointed out that *Diamond Heights,* 'did not elaborate on what it meant by "stand[s] in the position" of a co-obligor.' (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 760.) The Court of Appeal [in *Diamond Heights*] was not called upon to answer the question to which Code of Civil Procedure sections 877 and 877.6 are narrowly addressed—whether 'any other joint tortfeasor or co-obligor' could claim contribution or indemnity from the settling primary insurer—and the court's conclusion that the excess insurer

could no longer assert bad faith or collusion for a different purpose would not appear to have depended on whether the excess insurer was or was not a co-obligor. In this light, the court's reference to ' "co-obligor" ' might be disregarded as superfluous, or at best gratuitous, without reaching the question whether the court meant that the excess insurer was or was not a co-obligor. Several courts have disagreed with the implication that the excess insurer *was* a co-obligor [citations], and the *Diamond Heights* court itself has disavowed the implication, acknowledging 'that insurers are, at most, serial obligors on separate contracts, not co-obligors on a contract debt . . . .' (*Hartford Accident & Indemnity Co.* v. *Superior Court* (1995) 37 Cal.App.4th 1174, 1181 [44 Cal.Rptr.2d 126].)" (*Topa Ins. Co.* v. *Fireman's Fund Ins. Companies, supra,* 39 Cal.App.4th at pp. 1339-1340, italics in original.)

This court in *Pacific Estates, Inc.* v. *Superior Court, supra,* 13 Cal.App.4th 1561 which dealt with the problem more directly than the court in *Diamond Heights,* determined the phrase " 'co-obligors on a contract debt' " as used in the good faith settlement statutes referred to "parties to a contract dispute which itself is the subject of the underlying litigation." (*Pacific Estates, Inc.* v. *Superior Court, supra,* 13 Cal.App.4th at p. 1571.) And because the nonsettling insurers were not such "co-obligors," it was error for the trial court, believing that they were co-obligors, to deny the writ. We therefore issued a writ of mandate directing the trial court to vacate its order and to reconsider the motion requesting a determination of good faith. (*Id.* at p. 1576.)

A third case, *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586 [26 Cal.Rptr.2d 762], noted the divergent views between the *Diamond Heights* and *Pacific Estates* courts and stated were it necessary for the court to reach the issue, it would "be inclined toward the *Pacific Estates* view, because by definition a primary and an excess insurer are *serial* obligors on separate contracts, not *co*-obligors on *a* contract debt." (21 Cal.App.4th at p. 1594, fn. 7, italics in original.)

To similar effect is the decision in *Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th 753. The *Herrick* court stated, "[w]hatever the case may be between primary and excess insurers, there can be no doubt that between *only primary* insurers the respective obligations arise strictly out of separate contracts—hence they are not co-obligors on 'a' contract debt (singular)." (*Herrick Corp.* v. *Canadian Ins. Co., supra,* 29 Cal.App.4th at p. 761, italics in original.) Although the *Herrick* court only addressed the issue as between primary insurers the principle remains true, insurers are not "co-obligors on a contract debt."

The court in *Hartford,* which is the court which decided *Diamond Heights,* stated, "Section 877.6, subdivision (c) is limited to 'claims . . . for equitable

comparative contribution . . . *based on comparative negligence or comparative fault.'* Because an action by one insurer seeking contribution from a nonparticipating insurer does not depend on 'fault' concepts but is based on an equitable apportionment of the contractual undertakings [citation], the bar of section 877.6 subdivision (c) is inapplicable." (*Hartford Accident and Indemnity Co.* v. *Superior Court* , *supra*, 29 Cal.App.4th 435, 441, italics in original.)

CNA and Transport seek to extend application of section 877.6 to insurers for various policy reasons. Transport argues that courts, as well as the Legislature, have an established policy of promoting settlement. CNA questions whether resolution of insurance disputes would be possible if section 877.6 is not applied to insurance matters. Similar lines of argument were raised in *Topa*. There the insurer argued the current case and statutory law thwarts public policy because " 'a lone insurer involved in a multi-insurer coverage litigation can block or impair settlements in both the underlying and the coverage actions by cross-complaining against the settling insurer, no matter how reasonable the settlement between the co-insurer and the insured. This is because few insurers will enter into settlements with their insureds if faced with the threat of continuing litigation regarding the same claim from a co-insurer.' " (*Topa Ins. Co.* v. *Fireman's Fund Ins. Companies,* *supra*, 39 Cal.App.4th at p. 1344.) The court's response in *Topa* is applicable here, "We do not reach this argument because, under the law, we cannot: regardless of its merits in the abstract, the argument *does not afford a basis* for *construing* the language of Code of Civil Procedure sections 877 and 877.6 as [the insurer] proposes, and we cannot *rewrite* the language. If insurers are to have the relief [the insurer] seeks by way of statute, then [the insurer's] argument must be urged to the Legislature rather than to the courts." (*Ibid.*, italics in original.)

In the alternative, Transport argues the trial court's order barring First State from asserting future claims for equitable contribution or indemnity was within the court's equity powers. This identical argument was raised in *Topa*, and we find that court's response equally appropriate: "The matter before us does not come within the concept of inherent judicial powers as thus narrowly, and appropriately, confined to procedural innovations arguably essential to effective exercise of otherwise-granted jurisdiction or vindication of otherwise-established substantive rights or powers. . . . The substantive effect of such a determination as between joint tortfeasors and co-obligors has been legislatively established. Were the substantive effect of such a determination as among multiple liability insurers to have been otherwise established, then arguably the trial court might have exercised its inherent powers . . . ." (*Topa Ins. Co.* v. *Fireman's Fund Ins. Companies,* *supra*, 39 Cal.App.4th at p. 1345.)

CNA points out First State's claim for equitable contribution or indemnity will be determined by a trial court exercising its equitable powers. However, the correct time for using those equity powers is at the time when the complaint(s) arises. As the court stated in *Topa,* "[the settling insurer], if entitled as a matter of equity to special consideration with respect to [the non-settling insurer's] claims in light of the settlement between [the settling insurer] and [the insured], should reasonably expect to receive that consideration in proceedings on [the non-settling insurer's] cross-complaint." (*Topa Ins. Co.* v. *Fireman's Fund Ins. Companies, supra,* 39 Cal.App.4th at p. 1346.)

## DISPOSITION

The trial court's orders are reversed and the matter is remanded to the trial court with directions to enter a new order which may recite the settlements between Rohr and Transport and CNA were made in good faith but may neither bar nor limit First State's claims against Transport or CNA on the basis of such good faith determination. Costs on appeal are awarded to First State.

Neal, J., concurred.

**WOODS, J.,** Concurring.—I concur and write separately to accentuate the statutory shortcomings pertaining to good faith settlement procedures prescribed by Code of Civil Procedure sections 877 and 877.6. Whether these sections apply in the context of insurers seeking contribution, indemnity or other relief inter se has perplexed the courts for a considerable period of time. The judicial history of the conflicting Court of Appeal decisions on the issue is well developed in this opinion. I am convinced that our decision in *Pacific Estates, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1561 [17 Cal.Rptr.2d 434] gives us proper guidance for resolution of the contentions in this matter relative to Code of Civil Procedure sections 877 and 877.6.

However, the question of whether insurance carriers should be included as "joint tortfeasors or co-obligors on a contract debt" when settling litigation on behalf of an insured so situated is a question which the Legislature should address. I urgently invite the Legislature to revisit Code of Civil Procedure sections 877 and 877.6 and consider passage of legislation which resolves the conflicting decisions and views of the Court of Appeal as highlighted in this opinion.

The petition of respondents CNA Casualty of California et al. for review by the Supreme Court was denied March 11, 1998.