[No. H010911. Sixth Dist. Jan. 26, 1994.]

SONIA SANCHEZ, Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

Donald M. Layne for Plaintiff and Appellant.

Campbell, Warburton, Britton, Fitzsimmons & Smith and Ralph E. Mendell for Defendant and Respondent.

**OPINION**

**COTTLE, P. J.**—After Sonia Sanchez obtained a stipulated judgment against L & C Janitorial Service Co. (L & C) and its owner, Cleveland Cadle, she brought a direct action against L & C's insurer, Truck Insurance

Exchange (Truck), as authorized by Insurance Code section 11580.[1] Truck demurred, and the court sustained its demurrer without leave to amend on the ground that the "no action" clause[2] in Truck's policy precluded suit against it in cases where the judgment against its insured was entered on less than a full, adversarial trial. For reasons we shall explain, we reverse.

## Standard of Review

■ In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] . . . [W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### Facts Set Forth in Sanchez's Complaint and Facts Judicially Noticed (i.e., Court Proceedings in This Case Included in Joint Appendix)

Sanchez's complaint incorporated by reference copies of (1) the first amended complaint in the underlying action, (2) the judgment entered therein, and (3) the "Comprehensive Liability Policy" that Truck issued to its insureds.

Sanchez was employed by L & C from March 23, 1989, until December 6, 1989. She was pregnant at the time with her fourth child. Sanchez's husband was employed as a sergeant in the United States Army. Approximately 10 days after Sanchez started work, Edward Cadle, an L & C employee whose father, Cleveland Cadle, owns the company, commenced a course of sexual misconduct which eventually led Sanchez to quit her job. The younger Cadle

---

[1] All further statutory references are to the Insurance Code unless otherwise stated.

[2] The clause reads: "No action shall lie against the Company under any coverage unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor (a) as respects Coverages A, B and B-1 until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company . . . ."

invited Sanchez to engage in all manner of sexual relations with him, made attempts to kiss her on the neck and elsewhere, and grabbed her breasts, buttocks and pelvic area. Sanchez complained to her supervisors, including Edward Cadle's father, all to no avail. The elder Cadle told her that was his son's way of teasing. He told her Edward did it with all the "girls" and to just ignore it. On December 5, 1989, Edward Cadle called Sanchez at home, told her he knew her husband was away, and that he wanted to make her "feel creamy inside." Sanchez quit work the following morning.

On May 14, 1990, Sanchez filed a complaint in the Monterey County Superior Court against L & C, Edward Cadle, and various Doe defendants. On September 26, 1991, she filed a first amended complaint, adding Cleveland Cadle as a defendant. Sanchez sought damages for wrongful constructive discharge, assault and battery, and negligent supervision. In her complaint, she also alleged that L & C was the alter ego of Cleveland Cadle. The Cadles tendered defense of the lawsuit to their insurer, Truck, but Truck refused to defend or to be involved in any way.

The underlying action came up for jury trial on August 31, 1992. Before beginning jury selection, the parties entered into a proposed settlement which they presented to the court for approval. The court heard the terms of the proposed settlement and specifically found "that said settlement meets the criteria stated in Tech-Bilt, Inc. v. Woodward-Clyde & Associates, (1985) 38 C3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]" and accordingly is "made in good faith."

The judgment decreed that L & C was the alter ego of the elder Cadle, that Sanchez recover from L & C and Cleveland Cadle $250,000, that Sanchez covenanted not to execute on the judgment against Cadle and to defer executing on the judgment against L & C until the direct action against the insurer was resolved. After a reasonable time, if she was unsuccessful against the insurer, she could execute against L & C for no more than $25,000. The judgment further decreed that the action be dismissed with prejudice against Edward Cadle.

Sanchez then filed her direct action against Truck, alleging that it rejected multiple tenders of defense of the underlying action against L & C's insureds, Cleveland Cadle and L & C, and that now it refuses to pay the judgment which Sanchez obtained.

The policy, which was attached to the complaint, stated that Truck agreed "to pay all damages which the insured becomes legally obligated to pay because of . . . bodily injury to any person . . . caused by an occurrence to

which this insurance applies." The 137th paragraph of the policy read: "VIII. ACTION AGAINST THE COMPANY [¶] No action shall lie against the Company under any coverage unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor (a) as respects Coverages A, B and B-1 until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company . . . ."

On November 10, 1992, Truck demurred to Sanchez's complaint on the ground the "no action" clause in the policy precluded Sanchez's action because the judgment she obtained was not after "actual trial" or by "written agreement" of the insurer. The court sustained the demurrer, and the action was dismissed with prejudice. Sanchez timely appealed.

### DISCUSSION

■ The primary issue on appeal is whether an insurer that refuses to defend its insured can rely on the "no action" clause in its policy to preclude an action under section 11580. We hold that it cannot where a stipulated judgment was obtained against the insured in good faith.

Section 11580 requires every liability policy issued in California to contain a provision that whenever judgment is secured against the insured in an action based upon bodily injury, death, or property damage, for which the insurer is liable, then an action may be brought by the judgment creditor against the insurer to recover on the judgment. ■ It is well settled that a policy provision that is in derogation of or in conflict with the purpose of this statute is invalid. (See, e.g., *Malmgren v. Southwestern A. Ins. Co.* (1927) 201 Cal. 29, 33 [255 P. 512] [policy required as a condition precedent to injured person's right of action that execution on the judgment be returned unsatisfied by reason of bankruptcy or insolvency of the insured], questioned on another ground in *State Compensation Ins. Fund v. Bankers Indem. Ins. Co.* (9th Cir. 1939) 106 F.2d 368, 373; *Olds v. General Acc. Fire etc. Corp.* (1945) 67 Cal.App.2d 812 [155 P.2d 676] [policy provided for a shorter period to bring suit than that authorized by the applicable statute of limitations].)

■ Prior to the decision in *Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709 [3 Cal.Rptr.2d 483], there was no question that a "judgment" within the meaning of section 11580 included both judgments by default and judgments entered after the insured settled the lawsuit and took a covenant not to execute. (See, e.g., *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865,

872, 884-885 [151 Cal.Rptr. 285, 587 P.2d 1098] [default judgment]; *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 228, 236-242 [178 Cal.Rptr. 343, 636 P.2d 32] [insured settled].) Since at least 1968, the rule has been "that where the insurer has repudiated its obligation to defend[,] a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute. Moreover, the giving of such a covenant by plaintiff (the injured party) does not bar his subsequent action directly against the insurer. [Citations.]" (*Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802-803 [66 Cal.Rptr. 561].)

Truck successfully argued in the trial court that the law has now changed because of the decision in *Rose* v. *Royal Ins. Co.*, *supra*, 2 Cal.App.4th 709. We disagree. In *Rose*, the insurer, under a reservation of rights, provided its insureds with independent counsel because its interests were in conflict with its insureds' interest (i.e., the insureds wanted to prove that their acts were negligent and therefore insurable while the insurer wanted to prove the acts were intentional and therefore not covered). (See generally, *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].) Subsequently, the parties, with the help of the insureds' independent counsel, entered into a consent judgment for over $1 million, which recited that it was "[b]ased upon the negligence" of the insureds.

The judgment creditor then brought a direct action against the insurer. The insurer demurred, arguing that the policy's "no action" clause, which required that the judgment be obtained after "actual trial," precluded the judgment creditor's action. The trial court sustained the insurer's demurrer without leave to amend, and the Second District Court of Appeal affirmed. It held that, under the circumstances of that case, ". . . the policy's requirement of judgment after actual trial neither defeats the purpose of section 11580 nor conflicts with its provisions. On the contrary, the requirement protects defendant's legitimate interest in not being made to indemnify its insured pursuant to a judgment based on collusion between the insured and the injured party." (*Rose* v. *Royal Ins. Co.*, *supra*, 2 Cal.App.4th at p. 716.) The *Rose* court went on to explain that "judgment after actual trial" meant " 'a contest of issues leading up to final determination by court or jury, in contrast to a resolving of the same issues by agreement of the parties; i.e., without a contest.' [Citation.]" (*Id.* at p. 716, italics omitted.)

The same Second District Court of Appeal, however, ruled in *Pacific Estates, Inc.* v. *Superior Court* (1993) 13 Cal.App.4th 1561, 1568, fn. 6 [17 Cal.Rptr.2d 434], that it was "unclear what application [the *Rose* decision]

might have in the present case where real parties did not provide a defense under a reservation of rights or otherwise." It noted that in *Rose*, ". . . the insurer provided a defense for its insured . . . . Independent counsel was provided to defend the insured in the underlying action. The litigation was settled when the plaintiff and the insured agreed to a stipulated judgment negotiated by the insured's independent counsel. In a later action by the plaintiff against the insurer, *we held the insurer was not bound by the stipulated judgment entered into without its approval or consent and while the insured was being defended by the insurer*." (*Ibid.*, italics added.) Thus, the same court that decided *Rose* did not see the applicability of its decision to cases where the insured failed to provide its insured with a defense.

The other case on which Truck relies on appeal is *Wright v. Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998 [14 Cal.Rptr.2d 588]. In *Wright*, the court held that a stipulated judgment against an insured, to which the insurer did not consent, was insufficient to constitute a judgment within the meaning of section 11580. The insurer in that case had provided its insured with independent counsel under a reservation of rights, as in *Rose*. That independent counsel negotiated a settlement under which the third party claimant received a stipulated judgment and an assignment of the insured's causes of action in exchange for an agreement not to execute against the insured personally. The insurer's own counsel, who was present at the hearing, stated he could neither oppose nor consent to the judgment.

The *Wright* court stated: "To sue an insurer directly, a party must have obtained a final judgment against the insured. (See *Chamberlin v. City of Los Angeles* (1949) 92 Cal.App.2d 330, 332 [206 P.2d 661].) A judgment on the merits, however, is not always required and insurers have been bound by default and stipulated judgments under certain circumstances. (See, e.g., *Zander v. Texaco, Inc.* (1968) 259 Cal.App.2d 793, 799, 804-806 [ ] [an insurer that renounced coverage and defense was bound by a default judgment obtained after the insured did not appear at trial in exchange for a covenant not to execute]; *Clemmer v. Hartford Insurance Co.*, [1978] 22 Cal.3d 865, 884-886 [151 Cal.Rptr. 285, 587 P.2d 1098] [default judgment binding where insurer learned of wrongful death suit the day before the hearing on the default judgment but failed to assume control and management of the suit against its insured by way of a motion to set aside the judgment pursuant to Code Civ. Proc., § 473]; *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 228, 236-242 [ ] [an insurer that refused to defend was bound by a judgment entered after its insured settled with the injured party and thereafter presented no defense at trial].) Additionally, the fact the insured's settlement with the injured party included a covenant not to execute against the insured does not prevent the judgment from being

binding on the insurer. (See, e.g., *Samson, supra,* 30 Cal.3d at p. 240; *Zander* v. *Texaco, Inc., supra,* 259 Cal.App.2d at p. 802; see also *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [ ] [entire judgment entered after trial on merits binding on insurer that had defended but refused a reasonable settlement offer]; *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 802-803 [ ] [same].)" (*Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th at pp. 1016-1017.)

The court distinguished its case, where Fireman's Fund had provided its insured with a defense, with the cases cited in the last paragraph. "All of the cases in which a judgment not on the merits has been found binding on the insurer were based upon the principle an insurer who has an opportunity to defend and wrongfully fails to do so is liable on the judgment against the insured." (*Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th at p. 1019.) It also distinguished its facts from those in *Samson* v. *Transamerica Ins. Co.,* upon which the Wrights primarily relied, "on the basis of Transamerica's refusal to defend and rejection of a reasonable settlement offer, [and] also because the amount of the Samson judgment was determined by the court after at least a minimal evidentiary showing. [Citation.]" (*Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th at p. 1019, fn. 11.)

We believe these distinctions apply equally in the instant case. Truck failed to provide a defense to its insureds in this case even though the first amended complaint alleged, inter alia, negligent supervision of the younger Cadle. The law is well settled that an insurer has a duty to defend suits which *potentially* seek damages within coverage of the policy. (See, e.g., *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].) Additionally, some justification was made to the court at the time the judgment was entered, as the court specifically found "that said settlement meets the criteria stated in Tech-Bilt, Inc. v. Woodward-Clyde & Associates, (1985) 38 C3d 488 . . . ." █ Among the factors a court must consider in determining whether a settlement is "in the ballpark" and, therefore, in good faith, are: a rough approximation of the damages which the plaintiff is likely to recover, the amount of those damages attributable to the settling defendant, the amount of insurance, and whether there is any evidence of collusion, fraud, or tortious conduct between the plaintiff and settling defendant. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698 P.2d 159].)

█ In short, we disagree with Truck's premise that whenever a policy contains a "no action" clause, a third party claimant must, as a condition precedent to bringing a direct action, either obtain a judgment after trial or secure the insurer's written agreement. Truck has not been able to cite any

case where a court has given effect to a "no action" clause where the insurer wrongfully failed to provide a defense to its insured. Where the insurer refuses to defend, to indemnify, or to participate in any way in the underlying lawsuit, the insured may settle the lawsuit to his or her best advantage, so long as there is no fraud or collusion. (*Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561].) Here, the trial court specifically found an absence of fraud or collusion, in that it found that the *Tech-Bilt* criteria had been satisfied.

The only ground Truck raised in the trial court in support of its demurrer was the "no action" clause and the only case it cited was *Rose*. In this appeal, Truck argues that the demurrer could have been sustained on an alternative ground. ██ "As a general rule a party is not permitted to change its position on appeal and raise new issues not presented in the trial court. [Citation.] This is particularly true 'when the new theory depends on controverted factual questions whose relevance thereto was not made to appear' in the trial court. [Citation.] ██ However, 'a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts.' [Citation.] A demurrer is directed to the face of a complaint (Code Civ. Proc., § 430.30, subd. (a)) and it raises only questions of law (Code Civ. Proc., § 589, subd. (a); [citation]). Thus an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal [citation], and an appellate court can affirm or reverse the ruling on new grounds. [Citations.]" (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 959 [230 Cal.Rptr. 192].)

██ The new theory Truck raises on appeal is based on *Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th 998, and *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131], which held that a stipulated judgment with a covenant not to execute will not bind an insurer under Civil Code section 2778, subdivision 5.[3] We find both of those cases distinguishable.

In *Wright,* as noted above, the insurer had provided its insured with a defense and there was no showing made that the stipulated judgment was not fraudulent or collusive. Indeed, the court's primary concern was with "the potential for abuse and collusion when a stipulated judgment or settlement under which the insured has no personal liability binds the insurer. With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insureds' best interests are served by agreeing to

---

[3]Civil Code section 2778, subdivision 5 provides: "If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former."

damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages." (*Wright* v. *Fireman's Fund Ins. Companies, supra,* 11 Cal.App.4th at p. 1023.) In the instant case, in contrast, the trial court found that the amount of the settlement was "in the ballpark" with the tortfeasor's liability, that there was an absence of fraud or collusion, and that the settlement was made in good faith. Additionally, the corporation remained liable for $25,000 in damages if the direct action against the insurer proved unsuccessful (e.g., if the insurer could prove an exclusion in the policy applied.)

*Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th 1104, is also distinguishable. *Smith* held that a stipulated judgment with a covenant not to execute was insufficient to meet the requirements of a judgment necessary to assign a bad faith cause of action against the insurer. On the other hand, it held that a criminal conviction of manslaughter was sufficient to meet the "judgment" requirements. The facts in *Smith* are as follows: the parents of a child killed by a drunk driver sued the driver, who was insured by State Farm. The driver tendered defense of the lawsuit to State Farm, which refused to defend the suit. In a criminal proceeding taking place contemporaneously, the driver was convicted of manslaughter. The driver then entered into a stipulated judgment with a covenant not to execute by which he assigned his common law and statutory bad faith causes of action against State Farm to the parents.

Subsequently, the parents filed suit against State Farm on the assignment. State Farm demurred, and the trial court sustained its demurrer to all causes of action. The appellate court agreed that the statutory bad faith causes of action were barred by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], but it reversed on the common law bad faith cause of action, finding that the criminal conviction satisfied the requirement of a previous judgment. At the same time, the court found that the stipulated judgment with a covenant not to execute did not satisfy the judgment requirement because it shielded the insured from any liability whatsoever. It expressed concern that "to sanction such a transaction 'would be to invite collusion between the claimants and the insured' by allowing them to 'bootstrap[ ] their damages with the ingenious assistance of counsel.' [Citation.]" (*Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th at p. 1114.)

The court went on to say in a footnote, "We do not reach the question of what effect would be given to a judgment approved as a good faith settlement under Code of Civil Procedure section 877.6 or similar statute." (*Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th at p. 1115, fn. 4.)

That is because at a Code of Civil Procedure section 877.6 hearing, the court is required to consider the facts and circumstances of each case, including evidence of any collusion, fraud, or tortious conduct between the settler and the plaintiffs. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates*, *supra*, 38 Cal.3d at p. 499.) In the instant case, although the settlement was not approved under Code of Civil Procedure section 877.6, the court did determine the settlement satisfied the good faith criteria set forth in *Tech-Bilt, Inc.* Thus, the potential for abuse and collusion, about which the *Smith* court was particularly and justifiably concerned, is not at issue in this case.

The judgment is reversed. Costs on appeal are awarded to appellant.

Premo, J., and Mihara, J., concurred.

A petition for a rehearing was denied February 25, 1994, and respondent's petition for review by the Supreme Court was denied May 12, 1994.