[No. B074073. Second Dist., Div. Five. June 27, 1994.]

ANTONIA LEON ROMAN et al., Plaintiffs and Appellants, v.
UNIGARD INSURANCE GROUP et al., Defendants and Respondents.

**COUNSEL**

Garfield, Tepper, Epstein & Turner, Douglas A. Thompson and David B. Epstein for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs, Carol J. Knoblow and John V. Hager for Defendants and Respondents.

**OPINION**

**GODOY PEREZ, J.**—Plaintiffs/appellants Antonia Leon Roman; Andres Leon, by and through his guardian ad litem Antonia Leon Roman; Maria del

Rosario Leon, by and through her guardian ad litem Antonia Leon Roman; et al. (collectively as appellants) appeal from the judgment entered against them upon the granting of the motion for summary judgment of defendants/ respondents Unigard Insurance Group, Unigard Insurance Company (Unigard).

Because we conclude that the court erred when it found appellants' complaint was barred, as a matter of law, by the holding of *Smith* v. *State Farm Mut. Auto Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131], we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Wrongful Death Action*

In January of 1986, four members of the appellants' extended family (the Roman family) were killed, and numerous others suffered burn injuries in an arson fire in an apartment building on Flower Street in Los Angeles. Appellants, who are the 10 surviving members of the Roman family, brought suit for wrongful death against the owners of the building, the Kurtzmans; and the manager of the property, Ronald T. Hasson and the management company, Hasson & Associates (Hasson).

The action against Hasson was predicated upon his active negligence as real estate manager of the premises, alleging that he had actual knowledge of attempts to set fire to the building and had failed to alert the tenants and to post a guard after having been advised to do so by arson investigators. The action against the Kurtzmans was predicated upon their vicarious liability as owners of the premises and as employers of Hasson.

At the time of the fire the Kurtzmans were named insureds on policies of liability insurance issued by Aetna and Surety Company and Standard Fire Insurance (Aetna), consisting of a primary policy with an aggregate limit of $500,000 (primary policy) and an umbrella policy, denominated "Excess Indemnity Policy," with an aggregate limit of $10 million (excess policy). Both Aetna policies extended coverage to "any person acting as real estate manager for the named insured."

In May of 1985, Hasson purchased the Unigard policy and, according to his declaration, was not provided a copy of the policy until after the fire. The declarations page of the policy describes Hasson's business as "real estate broker and property management."

In this action, appellants and Aetna asserted that these insurance policies would apply in the following sequential three-tier manner: (a) the Aetna

primary policy would act as a true primary policy and, as to covered events, its limits would have to be exhausted before either the Unigard policy or the Aetna umbrella policy would come into play; (b) the Unigard policy would apply as excess coverage in relation to the Aetna primary policy; (c) the Aetna umbrella policy applied as excess to other valid and collectible insurance "whether such insurance is stated to be primary, contributing, excess, contingent or otherwise." Appellants contended, and Unigard disputed, that the Aetna umbrella policy coverage would come into play only upon exhaustion of both the Aetna primary policy and the Unigard policy.

In February 1986, counsel for Aetna alerted Unigard to the claims made by appellants against Hasson. During 1986 and 1987, Aetna made several unsuccessful attempts to secure Unigard's cooperation and participation in the defense of Hasson. Counsel for Hasson also attempted to secure Unigard's participation.

Unigard declined to provide coverage or defense for Hasson, asserting various endorsements contained in its policy exempted it from doing so. Among other things, Unigard claimed that these endorsements excluded coverage for liability arising out of real property management.

The parties commenced settlement discussions at a voluntary settlement conference held July 28, 1987. Counsel for appellants provided all attendees an analysis of the nature and extent of the claims against the various defendants, the injuries and deaths suffered by the Roman family, and the damages claimed. The total amount of damages claimed by the Roman family was over $5 million; their settlement demand was approximately $3.4 million. After this conference, Unigard advised Hasson of its decision to deny coverage and defense. Thereafter, Unigard did not attend or participate in settlement negotiations of Hasson's defense.

In late 1987, the parties, absent Unigard, agreed to seek a good faith determination by the court of an immediate payment by Aetna of $2 million. Such payment by Aetna was to resolve all claims as against the Kurtzman defendants and all indemnity obligations of Aetna, leaving appellants to pursue their claims against Hasson to the extent his liability for damages was not satisfied by the $2 million paid by Aetna.

By letter dated September 21, 1987, appellants advised Hasson's counsel and Unigard of their tentative settlement with Aetna and the Kurtzmans. The letter set forth three alternative proposals regarding resolutions of claims against Hasson and Unigard: (1) payment on behalf of Hasson in the amount of $1 million in resolution of all claims against Hasson; or (2) payment on

behalf of Hasson and Unigard in the sum of $1,392,110.40, the difference in damages claimed after the $2 million payment by Aetna, in resolution of all claims against Hasson and Unigard; or (3) an agreement by Hasson to the entry of a stipulated judgment against him in the sum of $1,392,110.40, subject to determination by the court, upon the submission of evidence by appellants, that the judgment amount constituted a fair and reasonable good faith compromise of the claims against Hasson. This proposal included two additional proposals: (a) if, after hearing appellants' evidence, the court found the amount of the proposed judgment not to be fair and reasonable, the court would make an independent determination of the amount of the stipulated judgment, which judicial determination would bind both Hasson and appellants; and (b) Hasson would assign all of his rights as against Unigard to appellants, and appellants would covenant not to execute as against Hasson personally.

On September 28, 1987, Unigard responded by denying coverage for the claim.

On October 9, 1987, Hasson accepted the third proposal, involving the stipulated judgment and judicial determination. On November 23, 1987, appellants and Hasson executed a formal settlement agreement, incorporating the provisions of the third alternative proposal.

The court, Honorable Robert Weil presiding, held the hearing on November 20 and 23, 1987. Counsel for Unigard attended these hearings and was invited by the court to comment upon or object to the evidence submitted. The court reviewed the evidence submitted and questioned appellants thoroughly as to their damages.[1] The court found the amount set forth in the Hasson appellants' settlement agreement to be in good faith, pursuant to Code of Civil Procedure section 877.6. In pertinent part, the court's written findings stated that the court had reviewed extensive evidence in making its determination of the reasonable amount of the stipulated judgment; that the judgment of $1,392,110.40 against Hasson was a fair and reasonable representation of Hasson's proportionate share of liability in light of the $2 million settlement made by Aetna on behalf of the Kurtzmans; that the stipulated judgment constituted a good faith settlement pursuant to Code of Civil Procedure section 877.6; and that the stipulated judgment was not the result of collusion or fraud.

*The Present Action*

On September 16, 1988, appellants filed a complaint against Unigard, pursuant to Hasson's assignment of his rights against Unigard. The complaint alleged causes of action for bad faith and for breach of insurance

---

[1]The evidence submitted included five volumes of documentary materials, including deposition transcripts, medical summaries, and memoranda on law and facts.

contract. On November 21, 1989, appellants filed their first amended complaint, alleging causes of action for breach of insurance contract, tortious breach of contract, reformation of contract, breach of oral contract, and violation of Insurance Code section 790.03, subdivision (h). The first four causes of action were first party actions, by way of the Hasson assignment; the Insurance Code section 790.03, subdivision (h), action was a third party direct action for bad faith insurance practices.

On October 15, 1992, Unigard noticed its motion for summary judgment. Unigard asserted appellants had no standing to sue it because Hasson's assignment of his claims against Unigard was invalid pursuant to the holding of *Smith* v. *State Farm Mut. Auto Ins. Co.*, *supra*, 5 Cal.App.4th 1104 and that appellants' fifth cause of action, based upon Insurance Code section 790.03, was barred by the holding of *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58].

The court granted Unigard's motion of November 30, 1992, and entered judgment on February 8, 1993.[2] This timely appeal followed.

DISCUSSION

Unigard's motion and the court's order, granting the motion, were based upon *Smith* v. *State Farm Mut. Auto Ins. Co.*, *supra*, 5 Cal.App.4th 1104, and *Moradi-Shalal* v. *Fireman's Fund Ins. Companies*, *supra*, 46 Cal.3d 287. *Smith* held that a stipulated judgment with a covenant not to execute was insufficient to meet the requirements of a judgment necessary to assign a bad faith cause of action against the insurer. While the facts of *Smith* are similar to those at bench, they differ in one telling aspect. In *Smith*, the stipulated judgment was not approved as a good faith settlement under Code of Civil Procedure section 877.6,[3] a difference noted by the *Smith* court. (See *Smith* v. *State Farm Mut. Auto Ins. Co.*, *supra*, 5 Cal.App.4th at p. 1115, fn. 4.)

---

[2]The court ruled, "As a matter of law: Ronald T. Hasson's assignment of rights to the instant plaintiffs is not valid because the settlement agreement reached between Hasson and the plaintiffs involving a stipulated judgment against Hasson in return for an assignment of rights against Unigard is ineffective and unenforceable; as a matter of law: Plaintiffs may not maintain causes of action against Unigard for breach of contract, tortious breach of contract, reformation, breach of oral contract and violation of Insurance Code section 790.03, subdivision (h), as 'real parties in interest' since the assignment of these causes of action by Ronald T. Hasson to the plaintiffs is ineffective and unenforceable; as a matter of law: Plaintiffs may not maintain causes of action against Unigard for breach of contract, tortious breach of contract, reformation, breach of oral contract, and violation of Insurance Code section 790.03, subdivision (h), as third parties."

[3]Code of Civil Procedure section 877.6 sets forth the procedures, burdens, evidentiary requirements and appellate procedures applicable to the hearing, wherein the superior court determines whether a settlement has been entered into in good faith.

Subsequent to *Smith*, the case of *Sanchez* v. *Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778 [26 Cal.Rptr.2d 812],[4] discussed this very difference. We find the following analysis by the *Sanchez* court to be persuasive: "*Smith* held that a stipulated judgment with a covenant not to execute was insufficient to meet the requirements of a judgment necessary to assign a bad faith cause of action against the insurer. On the other hand, it held that a criminal conviction of manslaughter was sufficient to meet the 'judgment' requirements. The facts in *Smith* are as follows: the parents of a child killed by a drunk driver sued the driver, who was insured by State Farm. The driver tendered defense of the lawsuit to State Farm, which refused to defend the suit. In a criminal proceeding taking place contemporaneously, the driver was convicted of manslaughter. The driver then entered into a stipulated judgment with a covenant not to execute by which he assigned his common law and statutory bad faith causes of action against State Farm to the parents. [¶] Subsequently, the parents filed suit against State Farm on the assignment. State Farm demurred, and the trial court sustained its demurrer to all causes of action. The appellate court agreed that the statutory bad faith causes of action were barred by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies*[, *supra*,] 46 Cal.3d 287, but it reversed on the common law bad faith cause of action, finding that the criminal conviction satisfied the requirement of a previous judgment. At the same time, the court found that the stipulated judgment with a covenant not to execute did not satisfy the judgment requirement because it shielded the insured from any liability whatsoever. It expressed concern that 'to sanction such a transaction "would be to invite collusion between the claimants and the insured" by allowing them to "bootstrap[ ] their damages with the ingenious assistance of counsel." [Citation.]' [Citation.] [¶] The court went on to say in a footnote, 'We do not

[4]The facts of *Sanchez, supra*, are as follows: Plaintiff brought a wrongful discharge action against the insured, L & C Janitorial Service, and others. The insurer, Truck Insurance Exchange (Truck), refused to defend the action. Prior to trial plaintiff entered into a stipulated judgment with the insured, and the parties presented the settlement and stipulated judgment to the court for its approval. The court approved the terms of the proposed settlement, specifically finding that the settlement satisfied the factors set forth in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]. (*Sanchez* v. *Truck Ins. Exchange, supra*, 21 Cal.App.4th at p. 1782.) The stipulated judgment contained a covenant not to execute against the insured until after the direct action by Sanchez against Truck could be resolved. Plaintiff filed the direct action, and the insurer demurred on the basis that the policy contained a "no action" clause which prohibited any suit against Truck, absent full compliance with all the terms of the policy and until the amount of the insured's obligation to pay was determined either by judgment against the insured after trial or by written agreement of the insured, the claimant and Truck. (*Id.*, at p. 1783.) The trial court sustained the demurrer.

In addition to the discussion and holding quoted above, on appeal the *Sanchez* court also held that the "no action" provision of the policy was invalid as violative of the "direct action" provision of Insurance Code section 11580, subdivision (b)(2). (*Sanchez* v. *Truck Ins. Exchange, supra*, 21 Cal.App.4th at p. 1783.)

reach the question of what effect would be given to a judgment approved as a good faith settlement under Code of Civil Procedure section 877.6 or similar statute.' [Citation.] That is because at a Code of Civil Procedure section 877.6 hearing, the court is required to consider the facts and circumstances of each case, including evidence of any collusion, fraud, or tortious conduct between the settler and the plaintiffs. [Citation.]" (*Sanchez* v. *Truck Ins. Exchange, supra,* 21 Cal.App.4th at pp. 1788-1789.)

The *Sanchez* court concluded that though the stipulated judgment before it had not been approved pursuant to Code of Civil Procedure section 877.6, it had been found by a court to have satisfied good faith criteria set forth in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at page 499, and, therefore, the potential for abuse and collusion feared by the *Smith* court was not at issue.

■ In the case at bench, the stipulated judgment and assignment entered into by appellants and Hasson was specifically approved as a good faith settlement under Code of Civil Procedure section 877.6 after a thorough hearing. As the *Sanchez* court did, we conclude there is no basis for concern, therefore, that the parties engaged in collusive or abusive conduct.

The *Smith* holding does not preclude this action. The stipulated judgment/ related assignment, having been approved pursuant to Code of Civil Procedure 877.6, satisfies the condition of a judgment or settlement of a claim needed before a valid assignment can be found. (See also discussion in *McLaughlin* v. *National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1154-1155 [29 Cal.Rptr.2d 559].)

■ We next discuss the viability of the bad faith (Ins. Code, § 790.03) cause of action. Appellants assert this cause of action is not barred by the holding of *Moradi-Shalal, supra,* because their initial complaint was filed one day before *Moradi-Shalal, supra,* became final; consequently, this cause of action may proceed because the liability of the insured was judicially determined by the stipulated judgment.

*Moradi-Shalal* held that Insurance Code section 790.03 did not create a private civil third party cause of action against an insurer. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 304.) It further held, ". . . our decision . . . will not apply to those cases seeking relief under section 790.03 filed before our decision here becomes final." (*Id.,* at p. 305.) In pertinent part, California Rules of Court, rule 24, provides, "A decision of the Supreme Court becomes final 30 days after filing unless the court orders a shorter time." The *Moradi-Shalal* court did not order a shorter time. (See

*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 313.)

Appellants initial complaint was filed September 16, 1988. *Moradi-Shalal* was filed August 18, 1988, and became final September 17, 1988. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d at p. 287.) Thus, appellants' complaint having been filed one day before *Moradi-Shalal* became final, was timely. Moreover, there having been a stipulated judgment, wherein the insured admitted liability, appellants have satisfied the requirement of a judicial determination of Hasson's liability, and appellants' fifth cause of action may proceed. (*Id.,* at p. 311.)

### DISPOSITION

The judgment is reversed. Appellants are awarded their costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 20, 1994.