[No. A068452. First Dist., Div. Three. Aug. 18, 1995.]

HARTFORD ACCIDENT & INDEMNITY COMPANY, Petitioner v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
WHITECLIFF CO., INC., et al., Real Parties in Interest.

## COUNSEL

Gordon & Rees, James Moushegian, John F. Hughes and Steven E. Turner for Petitioner.

No appearance for Respondent.

Jackson, Tufts, Cole & Black, D. D. Hughmanick, Gerald Z. Marer, Marily P. Lerner, Hayes & Ware, Robert S. Hayes and Dee A. Ware for Real Parties in Interest.

## OPINION

CHIN, P. J.—In *Diamond Heights Homeowners Assn.* v. *National American Ins. Co.* (1991) 227 Cal.App.3d 563, 582 [277 Cal.Rptr. 906] (*Diamond Heights*), we suggested that an excess insurer could stand in the position of a co-obligor on a contract debt and should be permitted to utilize Code of Civil Procedure section 877.6[1] proceedings to object to a settlement controlled by a primary insurer. Although we approved only defensive use of section 877.6 proceedings, litigants have read *Diamond Heights* as an invitation to use section 877.6 proceedings offensively to validate settlements and to make them binding upon insurers who have refused to defend the underlying actions.

Other courts have criticized some of the language in *Diamond Heights*. In this opinion we will clarify that section 877.6 proceedings may not be used offensively against an insurer, who is neither a party to the underlying action nor a joint tortfeasor or co-obligor upon a contract debt for purposes of section 877.6. We will direct issuance of a peremptory writ of mandate to vacate the superior court's confirmation of the settlement.

---

[1]Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

## I. FACTS AND PROCEDURES

During the late 1970's and early 1980's, William B. and Jessie Saleen, doing business as A-1 Masonry[2] (collectively Saleen), built some 1,200 chimneys in Contra Costa County under subcontract with predecessor companies of developer Whitecliff Co., Inc. (collectively Whitecliff). Although the specifications for these chimneys called for reinforcing steel, Saleen failed to include reinforcing in the chimneys that it built. Whitecliff was compelled to replace the 1,200 chimneys when homeowners discovered damage following earthquakes in April of 1990.

Whitecliff brought an action against Saleen, seeking indemnification for the $6,392 Whitecliff paid to replace each chimney. Saleen asked Hartford Accident & Indemnity Company (Hartford) to defend under general liability policies covering 1978 through 1986. Hartford declined on the grounds that there was no " 'occurrence' " during the policy period and that the policy did not cover damage to the insured's " 'work.' "

After warning Hartford that it might do so, Whitecliff settled with Saleen for $7,630,579 ($7 million hereafter). Whitecliff agreed not to execute until at least six months after judgment and not to execute against Saleen for more than $12,500. Saleen assigned its rights against Hartford to Whitecliff and agreed to cooperate with Whitecliff in pursuing the claims against Hartford.

Whitecliff applied for confirmation of the settlement under section 877.6, subdivision (a)(2). In response, Hartford noticed a motion contesting the settlement. Hartford objected to Whitecliff's use of section 877.6 proceedings to obtain judicial approval that might be used later against Hartford. Hartford noted that Saleen had no incentive to moderate the total amount of the settlement in light of Whitecliff's covenant not to execute on more than $12,500.

During the hearing on the motion to confirm the settlement, Whitecliff cited this court's decision in *Diamond Heights, supra,* 227 Cal.App.3d 563, and argued that Hartford should be bound by the settlement if the court determined it was entered in good faith. After hearing, the court issued an order confirming the settlement. The court concluded that, despite the absence of codefendants in the case, section 877.6 proceedings were appropriate for confirming the settlement. It found the settlement sum of $7 million to be in good faith, and it obliquely suggested that the only way for Hartford to avoid paying it would be to show Hartford had no duty to defend Saleen. This petition followed.

---

[2]The Saleens are husband and wife and are the principal owners of A-1 Masonry.

## II. Section 877.6

Section 877.6 provides in part: "(a)(1) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors . . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶] (d) The party asserting the lack of good faith shall have the burden of proof on that issue. [¶] (e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. . . ."

When an action involves only one tortfeasor or obligor, section 877.6 proceedings do not come into play. Neither settling party may contest its own settlement. There is no joint tortfeasor or co-obligor for the confirmed settlement to bar. (See *Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1491 [13 Cal.Rptr.2d 624] (*Peter Culley*).)

Whitecliff disagrees with this analysis on several grounds. First, Whitecliff observes that the statute only requires an "alleged" joint tortfeasor and notes the complaint here alleged Doe defendants. Next, Whitecliff asserts that absence of a joint tortfeasor did not adversely affect Hartford because a joint tortfeasor would have argued the settlement was too low, not too high, as Hartford contends. Finally, citing *Sanchez* v. *Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778 [26 Cal.Rptr.2d 812] (*Sanchez*), and *Roman* v. *Unigard Ins. Group* (1994) 26 Cal.App.4th 177 [31 Cal.Rptr.2d 501] (*Roman*), Whitecliff insists that section 877.6 confirmation proceedings are appropriate even when all defendants have settled. Under these authorities, an insurer who fails to defend may be held responsible for a settlement found to be in good faith, asserts Whitecliff.

We address these arguments before turning to Whitecliff's defense of our *Diamond Heights* decision.

### A. *Allegation of Joint Tortfeasors*

■ Whitecliff correctly observes that section 877.6, by its terms, applies when ". . . it is *alleged* that two or more parties are joint tortfeasors or

co-obligors . . . ." (§ 877.6, subd. (a)(1), italics added.) Use of the word "alleged" in this context does not mean, however, that section 877.6 proceedings are appropriate whenever a complaint names joint tortfeasors, even when only one tortfeasor is made a party. Subdivision (c) of section 877.6, which states the consequences of a section 877.6 ruling, demonstrates that the section applies only to actions involving both settling and nonsettling tortfeasors or co-obligors: "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor . . . ." (§ 877.6, subd. (c).) Read in context, the word "alleged" in the statute's first sentence merely acknowledges that the party need not be found liable in tort; allegations are sufficient. It is essential, however that the action involve *two or more parties* who are at least alleged to be joint tortfeasors or co-obligors and that some, but not all, of the parties have settled.

### B. *Role of the Joint Tortfeasor in a Settlement*

Whitecliff asserts that Hartford was not harmed by the absence of a joint tortfeasor because any joint tortfeasor's interest would have been adverse to Hartford's. Whereas Hartford believes the settlement was too high, a non-settling joint tortfeasor would find it too low, because the settlement would be offset against any judgment against the nonsettling tortfeasor. We conclude Whitecliff may not dismiss so easily the role of the joint tortfeasor.

The hypothetical joint tortfeasor is important here not for its participation in the section 877.6 hearing, but because of its influence on the settlement itself. If Whitecliff had a legitimate action against a joint tortfeasor, Whitecliff probably would not have valued the Saleen settlement at $7 million, because the entire $7 million could then have been set off against any judgment against the second tortfeasor. Whitecliff would have more cautiously balanced (1) its case against the joint tortfeasor, (2) the joint tortfeasor's ability to pay, and (3) the strength of Saleen's rights against Hartford. Whitecliff probably would have assigned a considerably lower value to the Saleen settlement if it were optimistic about its case against another joint tortfeasor. (See *Singer Co.* v. *Superior Court* (1986) 179 Cal.App.3d 875, 892-893 [225 Cal.Rptr. 159], for discussion of the importance of making all joint tortfeasors parties to the action.)

### C. *Sanchez and Roman*

In *Sanchez, supra,* 21 Cal.App.4th at page 1782, the plaintiff settled with all defendants, and the superior court found that the settlement was " 'made in good faith' " in that it met the criteria stated in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499 [213 Cal.Rptr. 256, 698

P.2d 159] (*Tech-Bilt*). *Sanchez* ruled that the insurer's " 'no action' " clause could not protect it from a direct action by the plaintiff under Insurance Code section 11580 if the insurer wrongfully refused to defend. (*Sanchez*, *supra*, 21 Cal.App.4th at pp. 1786-1787.) Although the superior court did not mention section 877.6 when it approved the settlement, its application of the *Tech-Bilt* criteria convinced the *Sanchez* court that the settlement was not abusive or collusive. (*Sanchez*, *supra*, 21 Cal.App.4th at p.1789.)

*Roman* took the next step, directly applying section 877.6 to a fully settled case. The superior court in *Roman*, *supra*, 26 Cal.App.4th at pages 180-181, expressly applied section 877.6 to a settlement between plaintiffs and all defendants. Citing and following *Sanchez*, *Roman* held the court's section 877.6 findings removed all concern about collusion or abusive conduct in the settlement. (*Roman*, *supra*, 26 Cal.App.4th at p. 184.)

Neither *Sanchez* nor *Roman*, both of which reversed pretrial orders barring actions against insurers, explained whether approval of these settlements would ultimately bind the insurers to the settlement amounts in indemnity trials. Each decided only that, because the confirmed settlements resulted in judgments in the underlying actions, plaintiffs could properly assert against recalcitrant insurers rights assigned by the settling defendant/insureds. In our view, explained more fully below, these two decisions reveal a disquieting trend toward extending the reach of section 877.6 proceedings. Neither holds, however, that a decision during such proceedings will be binding upon an insurer, who is neither a party to the underlying action, a joint tortfeasor, nor a co-obligor on a contract debt.

### III. DIAMOND HEIGHTS

Whitecliff asks us to reaffirm our ruling in *Diamond Heights*, which has been criticized for suggesting section 877.6 proceedings as a way to bind an insurer to a settlement of the underlying case by others. In *Diamond Heights*, plaintiff settled with two defendants for a sum including the policy limits from contributing insurers. The settling defendants assigned their rights to plaintiff, who then brought an action against those insurers who had refused to participate in the underlying case. Central National Insurance Company of Omaha (Central), an excess insurer who had not participated in the underlying case, sought summary judgment in the plaintiff's action against it. (*Diamond Heights*, *supra*, 227 Cal.App.3d at p. 570.)

The pivotal issue in *Diamond Heights* was whether the " 'no action' " clause in Central's policy gave it the absolute right to veto a settlement controlled by the primary carrier. (*Diamond Heights*, *supra*, 227 Cal.App.3d at p. 580.) We held it did not.

In the closing paragraphs of the opinion, we explained that an excess insurer was not without a means of avoiding a proposed settlement or challenging a final settlement. We noted that the excess carrier could waive its contractual right to avoid participating in the underlying action or settlement. (*Diamond Heights, supra,* 227 Cal.App.3d at p. 582.) We further suggested that an excess carrier ". . . may also challenge the settlement on the ground of unreasonableness or that it is a product of collusion between primary insurer and insured. [¶] An appropriate time for the insurer to present objections to the settlement is, as occurred in the instant case, at the good faith confirmation hearing pursuant to section 877.6, if there is one. If the excess insurer asserts the right to object, and is accorded due process in presenting its objections to the settlement, and the trial court confirms the settlement as made in good faith, the excess insurer stands in the position of a 'co-obligor' barred from making a claim of bad faith against the settling parties. (§ 877.6, subd. (c).) The excess insurer's remedy, if aggrieved by the good faith confirmation, is to petition the court for writ of mandate. (§ 877.6, subd. (e).)" (*Diamond Heights, supra,* 227 Cal.App.3d at p. 582, fn. omitted.)

We concluded Central was barred from objecting to the settlement because it fully participated in the section 877.6 hearing and neglected to petition for a writ of mandate challenging the court's confirmation order. We found Central was barred under principles of res judicata and collateral estoppel because it "had an identity of at least certain interests with its insured, and had the opportunity to present its objections to the settlement in protection of its own interests. [Citation.]" (*Diamond Heights, supra,* 227 Cal.App.3d at p. 583.)

*Pacific Estates, Inc.* v. *Superior* Court (1993) 13 Cal.App.4th 1561, 1567-1575 [17 Cal.Rptr.2d 434] (*Pacific Estates*), was the first of several decisions to disagree with or to limit the influence of the closing paragraphs in *Diamond Heights.* (See also *Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500 [42 Cal.Rptr.2d 295] (*Pruyn*); *Herrick Corp.* v. *Canadian Ins. Co.* (1994) 29 Cal.App.4th 753, 760-761 [34 Cal.Rptr.2d 844]; *Hartford Accident & Indemnity Co.* v. *Superior Court* (1994) 29 Cal.App.4th 435, 440, fn. 4 [34 Cal.Rptr.2d 520]; *Fireman's Fund Ins. Co.* v. *Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1594, fn. 7 [26 Cal.Rptr.2d 762] (*Fireman's Fund*).) We need not repeat the analyses and critiques those decisions provided. They properly pointed out that insurers are, at most, serial obligors on separate contracts, not co-obligors on a contract debt (*Fireman's Fund, supra,* 21 Cal.App.4th at p. 1594, fn. 7), and that insurers are not "parties" authorized by section 877.6 to seek hearings on the issue of the good faith of a settlement (*Pacific Estates, supra,* 13 Cal.App.4th at p. 1573).

Whitecliff seeks to distinguish *Pacific Estates* on the ground that the court there was concerned that an insurer could not fully litigate good faith at the section 877.6 hearing and would be hindered in obtaining discovery. (See *Pacific Estates, supra*, 13 Cal.App.4th at p. 1574.) Whitecliff asserts that Hartford had every opportunity to obtain discovery and received full due process at the hearing in this case.[3] Whitecliff also contends that because Insurance Code section 11580 allows a direct action against Hartford to collect a settlement, Hartford should be liable even if not considered to be in the position of a co-obligor. Whitecliff further argues waiver, estoppel, and invited error because Hartford initiated litigation about good faith and did not restate its fraud and collusion claims after its first brief challenging the settlement.

Whitecliff's waiver, estoppel, and invited error arguments are not persuasive. Hartford did not first propose the court use section 877.6 proceedings; Whitecliff did, and Hartford objected. Waiver and estoppel do not arise merely because Hartford did not then repeat its fraud and collusion arguments at every opportunity.

We disagree with Whitecliff's assertion that the court provided Hartford due process in the section 877.6 hearing. We see no evidence the court gave Hartford full party status and access to all the information considered by the settling parties or that it eliminated all inhibiting conflicts between Saleen and Hartford. (See *Pacific Estates, supra*, 13 Cal.App.4th at p. 1574.) Even had the court solved these problems, section 877.6 proceedings would not have been appropriate because the burden of proof in the section 877.6 proceedings was on Hartford, not on Whitecliff where it belongs. (Compare § 877.6, subd. (d), with *Peter Culley, supra*, 10 Cal.App.4th at p. 1497; see *Xebec Development Partners, Ltd.* v. *National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 544-558 [15 Cal.Rptr.2d 726], for discussion of the presumption and the burden of proof.)

"[W]hen the indemnitee settles without trial, the principles of *Lamb* v. *Belt Casualty Co.* [1935] 3 Cal.App.2d 624 [40 P.2d 311] and *Isaacson* v. *California Ins. Guarantee Assn.* [1988] 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297] apply. Pursuant to those principles, the indemnitee must show

---

[3]Whitecliff, implying that we should prejudge whether Hartford has properly denied coverage, contends Hartford's discovery request was inappropriate in light of its breach of the duty of good faith and fair dealing toward Saleen. If Hartford has acted inappropriately, Whitecliff may find an opportunity to penalize it for its actions. (See *Aero-Crete, Inc.* v. *Superior* Court (1993) 21 Cal.App.4th 203, 212-213 [25 Cal.Rptr.2d 804].) The court could not, however, properly deny Hartford needed discovery because of premature speculation about Hartford's coverage defense.

the liability is covered by the contract, that liability existed, and the extent thereof. The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable . . . ." (*Peter Culley*, *supra*, 10 Cal.App.4th at p. 1497.)[4]

Whitecliff fails to acknowledge the problems encountered when a section 877.6 proceeding is used to confirm a settlement entered by the defendant as a conduit to the defendant's insurer. The advance sheets are filled with accounts of creative efforts to obtain insurance money from insurers who have refused to defend and/or denied coverage. Although we will not try to summarize or reconcile them all, we note that the most common objective of the appellate courts has been to insure that the damage figure was settled in a way that minimized the potential for collusion and abuse. In that spirit, *National Union Fire Ins. Co.* v. *Lynette C.* (1994) 27 Cal.App.4th 1434 [33 Cal.Rptr.2d 496] affirmed a $1.5 million insurance coverage finding where the insurance company provided *Cumis*[5] counsel and a defense that included an uncontested prove-up in court of liability and damages. (Cf. *McLaughlin* v. *National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1154-1155 [29 Cal.Rptr.2d 559].) Applying the same spirit with different results, the courts in *Wright* v. *Fireman's Fund Ins. Companies* (1992) 11 Cal.App.4th 998 [14 Cal.Rptr.2d 588] (*Wright*) and *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131] (*Smith*) refused to bind insurers to stipulated judgments they had not fostered. The insureds entered these settlements in exchange for covenants not to execute, with the expectation plaintiffs would file direct actions or pursue assigned claims against the insurers.

The *Wright* court explained its concern: "With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insureds' best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages." (*Wright, supra*, 11 Cal.App.4th at p. 1023.) *Roman* and *Sanchez*, discussed above (see *ante*, at pp. 1179-1180), distinguished *Wright/Smith* on the ground that they did not involve settlements confirmed under *Tech-Bilt* principles. *Roman* and *Sanchez* both concluded that a *Tech-Bilt*

---

[4]Whitecliff contends *Peter Culley* is distinguishable because Culley was given no opportunity to object to the settlement before the underlying case ended, whereas Hartford has participated in a hearing in the underlying action. Although the two cases are different, the same principles apply. Neither Culley nor Hartford should be held to a settlement approved in motion proceedings where the burden of proof was on the wrong party.

[5]*San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913].

hearing could eliminate the concern for abuse or collusion. (*Roman, supra,* 26 Cal.App.4th at p. 184; *Sanchez, supra,* 21 Cal.App.4th at pp. 1788-1789.) We disagree.

We agree with the comprehensive analysis of these decisions authored by Justice Croskey in *Pruyn, supra,* 36 Cal.App.4th at pages 518-530, where the court refused to read *Roman* and *Sanchez* to mean that an insurer was bound by a good faith determination. (*Pruyn, supra,* 36 Cal.App.4th at p. 526.) By presenting prima facie evidence that it reasonably settled, the insured may obtain the benefit of a presumption of liability and of its amount. Court approval of the settlement during section 877.6 proceedings would satisfy the insured's prima facie burden (*Pruyn, supra,* 36 Cal.App.4th at pp. 527-530) and provide ". . . evidentiary value in the ultimate resolution of the bona fides of the settlement . . . ." (*Id.* at p. 523.) Where the insurer wrongfully abandoned the insured, the evidentiary presumption in favor of the settlement would shift the burden of proof to the insurer. (*Id.* at pp. 527-530.)

Section 877.6 was not designed for the purpose of obtaining good faith rulings binding on insurers and does not easily accommodate it. In partial defense of *Diamond Heights,* we note, however, that we offered section 877.6 proceedings as a possible *defense* for an excess insurer who might wish to prevent an adverse settlement from taking place. (*Diamond Heights, supra,* 227 Cal.App.3d at p. 582.) We did not directly license other litigants to use section 877.6 proceedings *offensively* to force insurers to participate in section 877.6 hearings and to bind them to determinations of good faith made in those hearings. The superior court here erred in permitting section 877.6 proceedings to take place over Hartford's objection and in concluding the section 877.6 decision would bind Hartford.

Whitecliff contends that this case involves a proper application of *Diamond Heights* because Hartford "initiated" the trial court proceeding challenging the settlement. It is clear, however, from Whitecliff's invocation of section 877.6 and suggestion that the court approve the settlement if Hartford failed to object within 25 days, that Whitecliff sought confirmation of the settlement in order to obtain a good faith ruling binding upon Hartford. Hartford's response was not a voluntary defensive use of section 877.6 proceedings, as contemplated by *Diamond Heights.* Whitecliff used section 877.6 proceedings offensively in a way not contemplated by the Legislature or by *Diamond Heights.* (Cf. *Peter Culley, supra,* 10 Cal.App.4th at p. 1488.)

Because the court purported to confirm the $7 million amount as binding upon Hartford, its order cannot stand.[6] Let a peremptory writ of mandate issue compelling the Contra Costa Superior Court to vacate its order confirming settlement.[7]

Merrill, J., and Corrigan, J., concurred.

A petition for a rehearing was denied September 13, 1995, and the petition of real parties in interest for review by the Supreme Court was denied November 16, 1995. Mosk, J., and Kennard, Jr., were of the opinion that the petition should be granted.

---

[6]Whitecliff reminds us of the burden upon the courts of this state if the good faith of each settlement must be litigated twice, as it will be here. We do not take this concern lightly. The result is inevitable whenever some, but not all, of the joint tortfeasors or co-obligors settle without the approval of all their insurers, and section 877.6 proceedings are invoked. However, where the case has fully settled, the settling parties have no cause to invoke section 877.6; thus, only one good faith hearing should take place.

[7]William and Jessie Saleen, who have filed a bankruptcy petition, do not believe the bankruptcy stay applies to this petition. In the event it does, the Saleens have advised this court that they waive any right they might have to stay the proceedings of this court.